Bilbar Construction Company, Appellant, *v.*
Easttown Township Board of Adjustment.

Argued June 5, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

June 28, 1957.

*Robert K. Greenfield*, with him *Thomas F. Devine*, and *Thomas A. Riley, Folz, Bard, Kamsler, Goodis & Greenfield*, for appellants.

*Theodore O. Rogers,* for Easttown Township Board of Adjustment, appellee.

*Harold E. Kohn,* with him *William H. Mitman,* and *Dilworth, Paxson, Kalish & Green,* for intervening appellees.

*Frederick H. Spotts,* with him *Pepper, Bodine, Frick, Scheetz & Hamilton,* for amicus curiae.

*David W. Craig,* with him *John E. Forsythe, John O. Platt, Jr., Moorhead & Knox, MacCoy, Evans & Lewis,* and *MacElree & Platt,* for amici curiae.

*C. Brewster Rhoads,* with him *Carl H. Anderson, Robert L. Trescher,* and *Montgomery, McCracken, Walker & Rhoads,* for amicus curiae.

*C. Brewster Rhoads,* with him *C. Russell Phillips, Walter W. Rabin, H. Mark Solomon,* and *Montgomery, McCracken, Walker and Rhoads,* for amicus curiae.

OPINION BY MR. CHIEF JUSTICE JONES, May 2, 1958:

Tredyffrin Construction Co. and its grantee, Bilbar Construction Company, have separately appealed from the order of the court below sustaining the action of the Zoning Board of Adjustment of Easttown Township, Chester County, which, in turn, had affirmed the Zoning Officer's refusal of Tredyffrin Construction Co.'s application for a building permit. The applicant sought permission to erect a dwelling on a specified lot of a subdivision which it proposed to lay out from a portion of its 50-acre tract of unimproved land in Easttown Township. The refusal of the permit was based on the fact that the lot upon which the proposed dwelling was to be built was patently deficient in area, as

well as frontage, under the provisions of the township's zoning ordinance. According to its title, the ordinance is known and cited as "The Easttown Township Zoning Ordinance of 1939" although enacted August 6, 1940. It is the same ordinance that was before us for interpretation and enforcement, in another connection, in *Devereux Foundation, Inc., Zoning Case*, 351 Pa. 478, 41 A. 2d 744 (1945).

As shown by the maps attached to and made part of the ordinance, property fronting on Greenlawn Road in Easttown Township is classified "A" residential. In such a district a single-family dwelling, inter alia, is a permissible structure on a lot of a minimum area of not less than 43,560 square feet (an acre) and having a frontage of 150 feet. For less restricted districts, the minimum lot areas and frontages are scaled downward by the ordinance and its incorporated maps. Greenlawn Road, which runs in a generally east-west direction, constitutes part of the northern boundary of Easttown Township and its center line is the division line between Tredyffrin Township on the north and Easttown Township on the south.

Tredyffrin Construction Co. acquired its land in Easttown Township in 1948. At least, a considerable part of the property abutted on Greenlawn Road and was, consequently, in an "A" residential zone. Nonetheless, the Tredyffrin Construction Co. in 1955 applied to the Zoning Officer of Easttown Township for a building permit for the erection of a single-family dwelling on a lot fronting on Greenlawn Road, having an area of only 21,000 square feet and a frontage of 100 feet. The Zoning Officer understandably refused to certify the application as a compliance with the requirements of the ordinance.

On its appeal to the Board of Adjustment from the action of the Zoning Officer, Tredyffrin Construction Co.

urged the Board to conclude from the facts adduced at a hearing before it that the requirements of the ordinance with respect to lot areas, as they relate to the applicant's property, are arbitrary and unreasonable and that the Zoning Officer erred in not so concluding and in not certifying compliance with the established zoning regulations.

All that Tredyffrin Construction Co. offered in evidence at the hearing before the Board of Adjustment (in addition to the Easttown Township zoning ordinance) was the testimony of several witnesses that, under the Tredyffrin Township ordinance and its related maps, the minimum lot areas on the side of Greenlawn Road opposite Easttown Township were less than those prescribed for an "A" residential district under the Easttown ordinance, and that 21,000 squre foot lots, as proposed by Tredyffrin Construction Co., could be improved with dwellings with no greater burden to the township for the widening and improvement of streets or the disposal of sewage than one-acre lots would impose. The fact is that the lot area restrictions of the Tredyffrin Township ordinance to which the appellant thus made reference for comparative purposes, had been down-graded by a re-zoning made at the instance of Tredyffrin Construction Co., itself, which had owned, developed and sold the properties on the north side of Greenlawn Road in Tredyffrin Township to which it now pointed, first, as a reason for a requested down-grading by Easttown of its "A" residential zoning restrictions and, second, as proof of asserted unreasonableness and arbitrariness of the Easttown ordinance as applied to the applicant's property.

Such was the extent of the evidence which Tredyffrin Construction Co. introduced before the Board of Adjustment and it offered no additional testimony on

its appeal to the court below from the action of the Board of Adjustment. Nor did the Bilbar Construction Company, Tredyffrin's subsequent grantee which, on stipulation, was joined as a party appellant months after the matter had been appealed to the court, ever offer any evidence at any time touching the alleged invalidity of Easttown's one-acre lot requirement in an "A" residential zone. The evidence as to lot areas and frontages in Tredyffrin Township was, of course, of no relevancy or materiality whatsoever even had Tredyffrin Construction Co. been seeking a variance which, for obvious reasons, it was avowedly not doing.

In *Michener Appeal*, 382 Pa. 401, 406, 115 A. 2d 367, we approved the refusal of a variance to the owner of a dwelling in a residentially restricted area in *Haverford* Township, Delaware County, who sought to convert his house, which was on the northern side of a township road division line, into a commercial property, because, directly across the road, in *Upper Darby* Township, same County, there were two nearby gas stations and a diner, open twenty-four hours a day, with much attendant noise and loud and boisterous talk, in a district zoned by the latter township commercial. It was manifestly a case of great hardship. Yet, there was nothing to be done about it because of the disparity in the zoning regulations of the two political subdivisions on their respective sides of the same public thoroughfare. It is plain enough that zoning restrictions in one township cannot be permitted to control or impinge upon the zoning regulations which a contiguous township may see fit to adopt. See *Gignoux v. Village of Kings Point*, 99 N.Y.S. 2d 280, 286.

Equally irrelevant and immaterial to the appellants' contention is the testimony as to what the applicant would do in the way of taking care of street require-

ments and sewage disposal if permitted to lay out lots each of a 21,000 square foot area in an "A" residential zone. Public issues, such as this case involves, are not to be resolved on either an *ad hoc* or personal basis.

The court below aptly epitomized the record before it as follows: "We do not understand the grounds of objection of appellants to the decision of the Board of Adjustment to be that the zoning regulations here involved have no substantial relation to public health, safety, morals or general welfare. Indeed, we find no evidence that they have no such substantial relation; and therefore, we may not interfere with their enforcement on that ground. See Gratton v. Conte, 364 Pa. 578, 584. Nor is there any evidence that the action of the Supervisors in establishing those regulations, or of the Board in its decision, was arbitrary or capricious."

The contention which the appellants have sought to advance boils down to the bald proposition that, under the meagre and immaterial facts which they adduced, the minimum lot area of one acre, which the Easttown ordinance prescribed for an "A" residential district, is presumptively unconstitutional. Certainly, there is nothing else in this case upon which to attempt an argument that the lot area restriction, as applied to the appellants' property, is arbitrary, unreasonable and confiscatory or that the restriction bears no reasonable relation to the health, safety, morals or general welfare of the community. The appellants contend, nonetheless, that the Easttown Township zoning ordinance is unconstitutional as applied to their property although the record, which the applicant presented to the Board of Adjustment and subsequently to the court below, and upon which the appellants now rest, affords no basis for the contention.

The rule is well established that the burden of proving clearly and unmistakably the unconstitutionality of a legislative enactment is upon the person so asserting. In *Gottschall v. Campbell*, 234 Pa. 347, 363, 83 A. 286, it was said,—"That one who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so, has been so often declared that the principle has become axiomatic." A legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the minds of the court. *Sharpless v. Mayor of Philadelphia*, 21 Pa. 147, 164. In *Erie & North-East Railroad Company v. Casey*, 26 Pa. 287, 300-301, it was recognized that "The right of the judiciary to declare a statute void, and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in very clear cases; one department of the government is bound to presume that another has acted rightly. The party who wishes us to pronounce a law unconstitutional, takes upon himself the burden of proving, beyond all doubt, that it is so." *Hadley's Case*, 336 Pa. 100, 104, 6 A. 2d 874, succinctly states as the practical effect of the rule, "All presumptions are in favor of the constitutionality of acts and courts are not to be astute in finding or sustaining objections to them. . . ."

The heavy burden resting upon the person asserting unconstitutionality of legislation is one of the most firmly established principles of our law: *Loomis v. Philadelphia School District Board of Education*, 376 Pa. 428, 431, 103 A. 2d 769; *Flynn v. Horst*, 356 Pa. 20, 31, 51 A. 2d 54; *Pennsylvania Company, etc., Trustee, Case*, 345 Pa. 130, 137-138, 27 A. 2d 57; *Hadley's Case*, supra; *Penn Anthracite Mining Co. v. Anthracite*

*Miners of Pennsylvania,* 318 Pa. 401, 405-406, 178 A. 291; *Busser v. Snyder,* 282 Pa. 440, 449, 128 A. 80; *Commonwealth v. Sweeney,* 281 Pa. 550, 556-557, 127 A. 226; *Commonwealth v. Grossman,* 248 Pa. 11, 14, 93 A. 781; *Gottschall v. Campbell,* supra. In particular, where the constitutionality of zoning ordinances has been attacked we have presumed that the municipal legislative body acted with purpose to serve the public welfare and that all intendments are in favor of their action. *Liggett's Petition,* 291 Pa. 109, 118, 139 A. 619; *Whitpain Township v. Bodine,* 372 Pa. 509, 511, 94 A. 2d 737. See, also, *Lower Merion Township v. Gallup,* 158 Pa. Superior Ct. 572, 576, 46 A. 2d 35.

The same presumption of constitutional validity that attends an act of the legislature is equally applicable to municipal ordinances whether they be enacted by the council of a city, town or borough or by the supervisors of a township. See *New Orleans Public Service v. City of New Orleans,* 281 U.S. 682, 686; *Marrs v. City of Oxford,* 32 F. 2d 134; *Gilchrist Drug Co. v. City of Birmingham,* 234 Ala. 204, 174 So. 609; *In re Porterfield,* 28 Cal. 2d 91, 168 P. 2d 706. The dictum in *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 166, 87 A. 2d 480, that "the presumption of constitutionality of an ordinance is not as strong as that of an Act passed by the Legislature" has no support in the law and is, therefore, to be disregarded.

The clear import of the above is that the burden of proof, when legislation is under attack on constitutional grounds, is on the one so asserting and never shifts. Even where there is room for difference of opinion as to whether an ordinance is designed to serve a proper public purpose, or if the question is fairly debatable, the courts cannot substitute their judgment for that of the authorities who enacted the

legislation. *Kerr's Appeal*, 294 Pa. 246, 144 A. 81; *South Carolina State Highway Department v. Barnwell Brothers, Inc.*, 303 U.S. 177, 190-191; and *Simon v. Town of Needham*, 311 Mass. 560, 42 N.E. 2d 516.

While the promotion of the public health, safety, morals or general welfare is the test for checking subjectively whether a municipality's exertion of its constitutional power to zone has been exceeded, courts do not apply the criteria in a vacuum. Someone must be injured by the ordinance's restrictions in order to raise the constitutional question, and the applicable objective test is whether the ordinance operates in an arbitrary, capricious, discriminatory or confiscatory manner as to the property of the complainant. The latter inquiry calls for judicial determination. But, as to the former, what serves the public interest is primarily a question for the appropriate legislative body in a given situation to ponder and decide. And, so long as it acts within its constitutional power to legislate in the premises, courts do well not to intrude their independent ideas as to the wisdom of the particular legislation. Specifically, with respect to zoning enactments, judges should not substitute their individual views for those of the legislators as to whether the means employed are likely to serve the public health, safety, morals or general welfare.

Although some of our recent cases appear to have ignored "general welfare" as a consideration in adjudging whether the police power has been constitutionally exercised in a given instance, it is not open to serious question that it is one of the important elements to be reckoned with in any such inquiry. Its importance lies partly in the fact that it admits of aesthetic considerations when passing upon the validity of a zoning ordinance. As long ago as *Kerr's Appeal*, 294 Pa. 246, 250, 144 A. 81, this court recognized that

"while a zoning ordinance cannot be sustained merely on aesthetic ground, that may be considered in connection with questions of general welfare." Since, with the passing of time, urban and suburban planning has become an accredited adjunct of municipal government, aesthetic considerations have progressively become more and more persuasive as sustaining reasons for the exercise of the police power.

In *Berman v. Parker*, 348 U.S. 26, 32, the Supreme Court of the United States, in unanimously upholding the constitutionality of the District of Columbia Redevelopment Act of 1945, said with respect to the scope of the police power: "Public safety, public health, morality, peace and quiet, law and order—these are some of the more conspicuous examples of the traditional application of the police power to municipal affairs. Yet they merely illustrate the scope of the power and do not delimit it. See Noble State Bank v. Haskell, 219 U.S. 104, 111. . . . The concept of the public welfare is broad and inclusive. See Day-Brite Lighting, Inc. v. Missouri, 342 U.S. 421, 424. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them." This clearly expressed concept of the public welfare is not to be disregarded on the question of the constitutionality of a zoning ordinance simply because the properties utilized in the redevelopment in the *Berman* case were acquired by the municipality through eminent domain. The Supreme Court itself points out that the use of eminent domain to acquire the prop-

erties was merely "the means to the end." The end was the redevelopment and the basic question was whether "the object", i.e., the redevelopment, was "within the authority of Congress." In other words, was the redevelopment a valid exercise of the federal government's police power in respect of the District of Columbia? To that inquiry, how the properties were obtained was wholly immaterial.

We ourselves have a number of times upheld the constitutionality of zoning ordinances which bore no reasonable relation to the health, safety, or morals of the community but whose constitutional validity rested alone upon their promotion of the general welfare. In *Landau Advertising Co., Inc. v. Zoning Board of Adjustment*, 387 Pa. 552, 128 A. 2d 559, we sustained as constitutional a zoning ordinance which prohibited certain types of outdoor advertising signs from being erected on buildings even in commercial zones of the city involved. An ordinance which prohibited the erection of billboards in residential districts was held to be constitutional in *Liggett's Petition*, 291 Pa. 109, 139 A. 619. The exclusion of buildings devoted to business uses from residential districts was deemed a constitutional exercise of the police power: *Ward's Appeal*, 289 Pa. 458, 137 A. 630. A zoning ordinance which prohibited the construction of row housing was upheld in *Dunlap Appeal*, 370 Pa. 31, 87 A. 2d 299. Residential districts restricted by a zoning ordinance to one-family dwellings is permissible: *Jennings' Appeal*, 330 Pa. 154, 198 A. 621. And, just recently, in *Swade v. Zoning Board of Adjustment of Springfield Township*, 392 Pa. 269, 140 A. 2d 597, we affirmed the refusal of a variance to an applicant who sought to conduct a prohibited business enterprise in the barn on his property in a residential zone although it was expressly found as a fact by the court below that "the

business carried on by the appellant did not adversely affect the health, safety, or morals of the public . . . ." In short, the prohibition of the business use was deliberately sustained solely on the ground that the restriction promoted the general welfare in the given case. The following excerpt from the opinion of the court below, whereon we affirmed *per curiam,* is peculiarly apposite here: "If we were to hold that the Zoning Ordinance of Springfield Township was unconstitutional as applied to the appellant's property, then we would throw every zone open to prohibited uses if it could be shown that the prohibited use did not offend against the public health, safety or morals, and we would in effect put an end to all zoning."

As to the zoned minimum lot size in an "A" residential district under the Easttown Township ordinance, *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97, may be cited as analogous in principle. We there upheld as constitutional a zoning ordinance's minimum lot restriction of 20,000 square feet in the "AA" residential district in Cheltenham Township on the ground that the requirement bore a reasonable relation to the health, safety, morals or general welfare of the community. Since the 20,000 square foot minimum lot size requirement in the more highly developed and more densely populated Cheltenham Township was constitutional, what possibly could make the 43,560 square foot prescription of the Easttown ordinance unconstitutional without any allowance for considerations of topography, area or character of existing realty development in the zoned district as a whole? The supervisors of rural and agricultural Easttown Township can hardly be said to have acted unreasonably or arbitrarily in prescribing a minimum lot area of one acre in the township's "A" residential district which, moreover, embraced property not acquired by the appel-

lants until years after the enactment of the ordinance. In any instance, a question as to prescribed lot areas under a zoning ordinance involves a relative matter which depends for its just solution upon the character of the particular locality and the type of structural improvements best designed to promote the health, safety, morals or general welfare of the community.

: In other jurisdictions, which have considered the problem of zoned lot sizes, minimum areas of approximately an acre or greater have been upheld as bearing a reasonable relation to the problem of public health, safety, morals or general welfare. The following furnish pertinent examples: *Gignoux v. Village of Kings Point,* 99 N.Y.S. 2d 280 (40,000 square feet); *Dilliard v. Village of North Hills,* 94 N.Y.S. 2d 715 (2 acres); *Fischer v. Township of Bedminster,* 21 N.J. Super. 81, 90 A. 2d 757 (5 acres); *Flora Realty & Investment Co. v. City of Ladue,* 362 Mo. 1025, 246 S.W. 2d 771 (3 acres). In the few instances where minimum lot areas have been invalidated—one a case of two and one-half acre lots (*County of Du Page v. Halkier,* 1 Ill. 2d 491, 115 N.E. 2d 635) and another three acre lots (*Hitchman v. Township of Oakland,* 329 Mich. 331, 45 N.W. 2d 306)— the rationale of the decisions was that the prescribed area was excessive in view of the properties already developed in the same zoning jurisdiction on considerably less area per lot. And, of course, minimum lot areas may not be ordained so large as to be exclusionary in effect and, thereby, serve a private rather than the public interest. Certainly a residence lot area of one acre in a rural and agricultural locality such as East-town Township cannot justifiably be adjudged zoning for exclusiveness.

Our decision in *Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118; which the appellants cite, has no pertinency to the question involved in the instant case. Basically,

*Medinger* was an attempt by municipal authorities to prescribe floor areas in rooms inside private dwellings—an exertion of zoning power which could hardly be thought to promote *public* health, safety, morals or welfare. There is no logical relation between "a minimum habitable floor area" inside a dwelling and a minimum lot area outside. It is the latter which comes peculiarly within zoning's competency.

The only thing which the applicant asserted in the way of suggested hardship was that dwellings built on half-acre lots would be more readily salable than dwellings built on acre lots and that, as a consequence, the development of half-acre lots would prove relatively *more* profitable. There was neither allegation nor proof that houses built on acre lots would entail a loss to the owner or developer. In any event, both Tredyffrin Construction Co. and Bilbar Construction Company entered into the development project fully aware, or at least bound with knowledge, of the existing zoning regulations affecting the property in question. See *Volpe Appeal,* supra, at p. 378. The Board of Adjustment found, and the conclusion has not been seriously questioned either below or here, that "The district of which the lot here in question is a part can be developed under the present requirements of the East-town Township Zoning Ordinance of 1939 and would be, if so developed, a creditable development."

The order of the court below is affirmed at appellants' costs.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

On June 28, 1957, the Supreme Court in a unanimous opinion held that Section 302 of the Ordinance of Easttown Township was unconstitutional as applied

to petitioners' property. Today a majority of this Court, including former Justice Chidsey, overrule that decision and hold that the Ordinance is constitutional. This relatively simple case has attained monumental stature because, in order to reach its conclusion, the three present members of this Court (1) have had to repudiate and by necessary implication overrule myriad decisions of this Court, and (2) to predicate their conclusion on the doctrine of *unlimited* police power—a doctrine which is repugnant to our birthright of Liberty, our traditions, our Constitution, and our American Way of Life.

Tredyffrin Construction Company was the owner of a 50 acre tract of unimproved land in Easttown Township under an agreement of sale to Bilbar Construction Company. The 50 acre tract lies in an area classified "A" Residential under the zoning ordinance of Easttown Township. Section 302 of the ordinance provides that *the minimum lot area in residential* districts shall be as follows: "In 'A' districts shall be *one acre,* or 43,-560 square feet,[1] with a minimum frontage of 150 feet; in 'B' districts, 21,000 square feet with a minimum frontage of 100 feet; in 'C1' districts, 14,000 square feet with a minimum frontage of 75 feet; in 'C2' districts, 8,500 square feet with a minimum frontage of 50 feet; in 'D' districts, 5,000 square feet with a minimum frontage of 50 feet." Certain districts are also zoned "Business"; these districts have no minimum lot area or frontage requirements.

Appellants made application to the zoning officer of the township *for a permit to construct* a single-family dwelling on a 21,000 square foot lot (which was part of its 50 acre tract) in the "A" residential district. The lot is rectangular in shape and has a frontage of 100

---

[1] Sometimes indicated as 208' x 208'.

feet on the south side of Greenlawn Road, east of Leopard Road, and extends 210 feet in depth. The area in question is, we repeat, residential, although Easttown Township is largely rural and agricultural. Easttown Township is confronted with the demands for space for housing for a rapidly increasing and expanding population.

Directly across the road, houses have been erected on lots which are zoned by the Tredyffrin Township zoning ordinance at 18,000 square feet, with a minimum front footage of 85 feet. Immediately to the northwest of appellants' tract the ordinance permits residences to be constructed with a minimum lot area of 12,000 square feet, with a frontage of 70 feet. Within approximately 400 feet of appellants' lot is a commercial area fronting on Lancaster Pike.

Petitioners' application for a permit was refused because the lot did not conform to the minimum area (and frontage) requirements of the ordinance in Residential zone "A". The Board of Adjustment of Easttown Township and, in turn, the Court of Common Pleas of Chester County, affirmed the action of the zoning officer and rejected appellants' contention that section 302 of the zoning ordinance, as applied to its property, is unconstitutional.[2]

Appellants contend that a zoning ordinance *in this residential area,* which requires for residential purposes a minimum lot area of *one acre,* is unconstitutional (1) because it has no reasonable relation to health, safety or morals,[2] and (2) because it is unreasonable,

---

[2] Despite the unquestioned and obvious raising of these issues, however, the majority opinion states:

"The court below aptly epitomized the record before it as follows: 'We do not understand the grounds of objection of appellants to the decision of the Board of Adjustment to be that the zoning regulations here involved have no substantial relation to public

health, safety, morals or general welfare. Indeed, we find no evidence that they have no such substantial relation; and therefore, we may not interfere with their enforcement on that ground. See Gratton v. Conte, 364 Pa. 578, 584. Nor is there any evidence that the action of the Supervisors in establishing those regulations, or of the Board in its decision, was arbitrary or capricious.' "

This statement of the lower Court, as Bilbar Construction Company et al. *correctly* point out, is contrary to the record. We must recall that a case of this kind does not have the formal rules of pleading customary in most cases. The difficulty of raising precise Constitutional questions before a lay Board of Adjustment* and before a lower Court which does not have to, but has a discretion to consider additional evidence is apparent. See for example, *Jacobs v. Fetzer*, 381 Pa. 262, 268-273, 112 A. 2d 356.

Unfortunately, the lower Court and the majority have overlooked or failed to read the record. From the earliest possible moment the Constitutional question was raised.**

Furthermore, in the petition of Bilbar et al. to the Court of Common Pleas for allowance of appeal from the decision of the Board of Adjustment, the following grounds, inter alia, were set forth:

"The Zoning regulations of Easttown Township as applied to the lot of Petitioner are arbitrary, confiscatory and an unreasonable restraint upon Petitioner in the proper use, enjoyment and alienation of the lot of petitioner.

"The Zoning Ordinance of Easttown Township, as applied to the lot of Petitioner at its present location, has no basis in the reasonable and proper exercise of police power by said Township.

---

* Whose records of testimony and proceedings are often, we are informed, of the skimpiest nature.

** It was the only question raised since the builders did not seek either an exception or a variance. In the opening statement before the Zoning Board of Adjustment counsel for the original appellant, Tredyffrin Construction Company, said: "This appeal is based on the position that the refusal of the Zoning Officer to issue a permit was in error in that the zoning requirements stated' by the Zoning Ordinance are arbitrary and unreasonable in view of the location of the lot and the character of the surrounding territory and its relation to the health, morals, and general welfare of the community, . . . ."

arbitrary and discriminatory. The procedure followed by these appellants to test the validity and constitutionality of the ordinance was proper: *Archbishop O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587; *Schmalz v. Buckingham Township Supervisors & Zoning Board*

---

"By virtue of the refusal to grant a building permit for a house upon its lot aforesaid by the Zoning Officer of Easttown Township and the decision of the Board of Adjustment, Petitioner has been unduly deprived of his right to the reasonable use of his property without due process of law under all of the circumstances.

"The enforcement of the present Zoning regulations of Easttown Township as applied to the lot of petitioner, to wit, the requirement that petitioner's lot in its present location must have at least One Hundred Fifty (150) feet in frontage and one acre in area prior to the erection of any residence thereon is in direct violation of the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania, imposing excessive and harsh restrictions upon Petitioner's property not in keeping with the type and character of the neighborhood and its existing development *and without due relation or regard to health, morals and general welfare of the community.*"

The lower Court expressly recognized the presence of this Constitutional issue in its opinion *on the petition for leave to intervene* when it said:

"Every proper regulation or restriction in a zoning ordinance has a direct complementary relation to every other, so that each provision and the coordinated whole operate upon each property in the municipality. Each and all must have substantial relation to public health, morals, safety, or general welfare. . . .".

Bilbar in its brief to the lower Court, said, inter alia: "Zoning ordinances and regulations, interfering as they do with the free use of property, depend for their validity upon a substantial relation of the restrictions imposed to the protection of the general health, safety or welfare of the community.

"Can the one acre classification applied by the zoning ordinance to appellant's land be justified on grounds of health and safety? Clearly not. Apart from the question of sanitation, it cannot be disputed that lots of 21,000 square feet (almost a full half acre) are more than adequate to meet all conceivable requirements of health and safety in a residential community."

*of Adjustment,* 389 Pa. 295, 132 A. 2d 233; *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97; *Jacobs v. Fetzer,* 381 Pa. 262, 112 A. 2d 356. Strange to say it is the *only* procedure to test the constitutionality of an Act or ordinance which the majority permit.[3]

The zoning law is silent on the right of appeal from a decision of the Court of Common Pleas and therefore appeals in zoning matters, irrespective of the amount involved, must be taken to this Court which has jurisdiction under its power of King's Bench.[4] *Delaware County National Bank v. Campbell,* 378 Pa. 311, 106 A. 2d 416; *Commonwealth v. Onda,* 376 Pa. 405, 103 A. 2d 90; *Commonwealth v. Balph,* 111 Pa. 365, 3 A. 220. In *Delaware County National Bank v. Campbell,* 378 Pa., supra, the Court said (page 316) : "This case arose on a certiorari and possessing as we do, and other courts of the Commonwealth do not, the powers of King's Bench, it was properly brought direct to this Court: Commonwealth v. Onda, 376 Pa. 405, 103 A. 2d 90; . . . ."

---

[3] The futility and absurdity of requiring the constitutionality of a zoning ordinance to be raised before a permit clerk and a Board of Adjustment was vividly pointed out in the dissenting opinion in *Jacobs v. Fetzer,* 381 Pa. 268-273.

[4] The Superior Court is an intermediate Court whose jurisdiction "is limited to matters expressly conferred by statute: Weinbach's Appeal, 316 Pa. 333, 175 A. 500." *Society Christopher Columbus v. Lombardo,* 155 Pa. Superior Ct. 67, 36 A. 2d 825. Jurisdiction of appeals to the Superior Court from proceedings in Common Pleas Court arise "if the subject of the controversy be either money, chattels, real or personal, or the possession of or title to real property, and if also the amount or value thereof really in controversy be no greater than $5000. . . .". Act of June 24, 1895, P. L. 212, as amended May 8, 1956, P. L. 1540, §1, 17 PS 184. Cf. *Bily v. Board of Property Assessment,* 157 Pa. Superior Ct. 252, 353 Pa. 49, 44 A. 2d 250.

In *Archbishop O'Hara's Appeal,* 389 Pa., supra, the Court said: "In view of the silence of the statute on the subject of appeal from the order of the lower court the scope of our review is certiorari in the broadest sense and we review the record 'only to see whether there is evidence to sustain the court's findings and whether the proceeding is free from a violation of law and any manifest abuse of discretion': Food Corporation v. Zoning Board of Adjustment, 384 Pa. 288, 293, 121 A. 2d 94; Kaufman Const. Co. v. Holcomb, 357 Pa. 514, 55 A. 2d 534. In Rolling Green Golf Club Case, 374 Pa. 450, 458, 97 A. 2d 523, we said: 'On appeal from a decision of a Court of Common Pleas in a zoning matter the case comes before an appellate court as on certiorari, and where there is adequate evidence to support the findings of the Court below and the proceeding is free from error of law and there has been no manifest abuse of discretion, the decision will not be reversed.'"

Zoning classifications are largely within the discretion and judgment of the pertinent zoning (or legislative) body, *subject to the provisions and limitations of the Constitution.* The nature and character of the neighborhood and the district are important factors which may be considered by the zoning authorities. Zoning, while desirable, was and still is in a legally uncharted sea, although many channel buoys and beacon lights had been erected, prior to today, to enable commissions to safely chart their course.

Zoning ordinances must be strictly construed since they are in derogation of the unalienable rights of mankind. *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533; *Medinger Appeal,* 377 Pa., supra; *Lukens v. Zoning Board of Adjustment,* 367 Pa. 608, 80 A. 2d 765; *Kline v. Harrisburg,* 362 Pa. 438, 68 A. 2d 182; *Shapiro v. Zoning Board,* 377 Pa. 621, 105 A. 2d 299; *United C.P. Asso-*

·ciation v. Zoning Board, 382 Pa. 67, 114 A. 2d 331. All authorities agree that zoning ordinances are constitutional only if and when they are enacted for the general welfare 'and are reasonably and clearly necessary for the health, safety, or morals of the property owners·or communities involved.[5]

.In Volpe Appeal, 384 Pa. 374, 377, 121 A. 2d 97, an ordinance of Cheltenham Township, Montgomery County, requiring a minimum lot area of 20,000 squarc feet (nearly half an acre) in a residential district zoned "AA", was sustained since it bore a reasonable relation to health and safety. The language of the unanimous ·opinion of the Court is particularly applicable to the case at bar:

"Municipalities have power to zone land for residential purposes *and to establish minimum lot requirements*[6] in connection therewith, *provided they are reasonable for the residential districts involved and bear a reasonable relation to the health and safety of the*

---

[5] There is not the slightest justification for overruling the unanimous statement of the court in *Allentown School District Tax Case*, 370 Pa. 161, namely, the presumption of the constitutionality of an ordinance is *not as strong* as that of an Act passed by the Legislature. The proposition is not only accurate, but I should think it is *obvious*. The Legislature is a constitutional arm of Government. Zoning Commissions are not a constitutional body; they can be abolished at the whim of the Legislature. Furthermore, the Statutory Construction Act of May 28, 1937 provides in Section 52 for presumptions for ascertaining—not the intention of Zoning Commissioners but—*the intention of the Legislature* which in Section 101 (60) is defined to be the General Assembly of the Commonwealth of Pennsylvania. There is *neither a constitutional nor a statutory presumption* in favor of the validity of an ordinance or a resolution of a Zoning Commission or an official act of a public official, although we are all agreed that each is presumed to be constitutional. Even apart from stare decisis, each of the aforesaid reasons demonstrates its accuracy.

· . [6] Italics throughout, ours.

*community.* The Courts have even gone so far as to hold that municipalities may, without violating the Constitution, exclude from residential districts,—*for reasons of health and safety*—business and trade of every sort, including hotels and apartment houses: Village of Euclid v. Ambler Realty Co., 272 U. S. 365; Ward's Appeal, 289 Pa. 458, 137 A. 630; Jennings Appeal, 330 Pa. 154, 198 A. 621. See also: Brosnan's Appeal, 330 Pa. 161, 198 A. 629 and Elkins Park Improvement Assn. Zoning Case, 361 Pa. 322, 64 A. 2d 783.

"A lot area of not less than 7500 square feet per family in an 'AA' residential district was impliedly approved by this Court in Appeal of Elkins Park Improvement Assn., 361 Pa., supra; and a minimum lot requirement of 4000 square feet per family for a one-family dwelling was impliedly approved in Brosnan's Appeal, 330 Pa., supra."

*Medinger Appeal,* 377 Pa. 217, 104 A. 2d 118, is one of several recent cases which are directly in point and rule the instant case. In *Medinger Appeal,* supra, this Court held unconstitutional Section 200 of an ordinance of Springfield Township, Montgomery County, which prescribed *a sliding minimum scale of habitable floor areas* in residential properties in different residential districts, *because the ordinance did not reasonably promote the health or safety or morals or general welfare of the community, and also because it was "arbitrary and discriminatory."* Section 200 is so analogous to the ordinance here involved that it is worth reciting. Section 200 provided for two-story residential houses as follows:

"AA"—1800 feet minimum habitable floor area; "A"—1400 feet, "B"—1125 feet, "C"—1000 feet, "D"—1000 feet. The Court said, inter alia, (pages 221, 225, 226):

". . . '. . . an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional. It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property: . . .

"It does not follow that a minimum scale of habitable floor space in a home may not have a reasonable, direct and proper relation to the health and morals, and possibly, to the safety of the occupants of the house or of the community in general, because it is well known that an overcrowding of persons or of members of a large family in a tiny house or in a small room or rooms might undoubtedly have a direct effect on their health and morals. But if a 1000-minimum habitable square feet is reasonable and proper for every home in one district and does not adversely affect the health, morals or safety of the occupants of such a house, 1125 square feet of habitable floor area in a nearby house cannot adversely affect the health, morals or safety of that home or of that community.

". . .

". . . neither aesthetic reasons nor the conservation of property values or the stabilization of economic values in a township are, singly or combined, sufficient to promote the health or the morals or the safety or

the general welfare of the township or its inhabitants or property owners, within the meaning of the enabling Act of 1931, as amended, or under the Constitution of Pennsylvania. Cf. White's Appeal, 287 Pa., supra, and Lord Appeal, 368 Pa., supra; also Pincus v. Power, 376 Pa. 175, 101 A. 2d 914, . . . .

"This ordinance flies in the face of our birthright of Liberty and our American Way of Life, and is interdicted by the Constitution."

Another recent case which clearly rules the instant case is *Archbishop O'Hara's Appeal*, 389 Pa., supra. In that case this Court in a unanimous opinion reversed the decision of the (Board of Adjustment and) lower Court in denying an application to build a parochial school on an 18 acre tract in an "AA" residential district. The Court in a comprehensive opinion by Justice BENJAMIN R. JONES, said (page 57) :

"In Lord Appeal, 368 Pa. 121, 130, 81 A. 2d 533, quoting from the leading case of White's Appeal, 287 Pa. 259, 134 A. 409, [which the present majority opinion in this and in Best v. Zoning Board (which is handed down simultaneously herewith) overrule by necessary implication, although it has been quoted or cited with approval by this Court more than 25 times] it was said: ' ". . . all property is held in subordination to the right of its reasonable regulation by the government *clearly necessary to preserve the health, safety or morals (or general welfare)* . . . of the people . . . . There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety, and general welfare . . . . *While such regulations may not physically take the property, they do so regulate its use as to de-*

*prive the owner of a substantial right therein without compensation.*[7] . . . 'The right to acquire and own property, *and to deal with it and use it as the owner chooses, so long as the use harms nobody,* is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty, —an expression of his freedom,—guaranteed as inviolate by every American bill of rights': Spann v. Dallas, 111 Tex. 350, 235 S.W. 513 . . . .' ' ' "

"*. . .*

"The language . . . in Medinger Appeal, supra, p. 225, is particularly applicable: 'The natural or zealous desire of many zoning boards to protect, improve and develop their community, to plan a city or a township or a community that is both practical and beautiful, and to conserve the property values as well as the "tone" of that community is commendable. But they must remember that property owners have certain rights which are ordained, protected and preserved in our Constitution and which neither zeal nor worthwhile objectives can impinge upon or abolish.' "

In *Schmalz v. Buckingham Township Supervisors and Zoning Board of Adjustment,* 389 Pa., supra, this Court declared a zoning ordinance to be unconstitutional which provided for a 50 foot set-back[8] of property in an agricultural district because it had no reasonable and substantial relation to health, safety or morals, and it likewise "amounted to an unlawful and

---

[7] See also: *United States v. Causby,* 328 U. S. 256; *Gardner v. Allegheny County,* 382 Pa. 88, 102, 103, 114, 114 A. 2d 491; *Nectow v. Cambridge,* 277 U. S. 183, 188, 189; *Prentiss v. American University,* 214 F. 2d 282, 283; *White's Appeal,* 287 Pa. 259, 266, 267, 134 A. 409.

[8] A 30 foot set-back was approved in *Kerr's Appeal,* 294 Pa. 246, 144 A. 81, and in *Valicenti's Appeal,* 298 Pa. 276, 148 A. 308.

arbitrary confiscation of the rights of this property owner in this type of community."

In the instant case the property owner introduced the above mentioned ordinance which provided *for a sliding scale minimum lot area for residential districts* which, we repeat, were far below that required for appellants' property. The Township Commissioners were authorized by ordinance to require property owners to construct or widen roads and sidewalks at the owners' expense, thereby insuring the safety of persons using that area. The property owners proved that the land, its soil and drainage, were adequate for on-site sewage disposal. They thus proved that the safety and health of the owners and tenants of the properties in question and the people who used the roads and sidewalks would be safeguarded.

Nevertheless, the Commissioners contended that even though 5000 minimum square feet, 8500 minimum square feet, 14,000 minimum square feet, and 21,000 minimum square feet, satisfied the requirements of public health, safety and morals and general welfare of these *residential* districts, still this particular residential district (which adjoined them) was required to have a minimum lot area of one acre—43,560 square feet. This one acre was required, they contended, because any less area would (a) substantially increase taxes, and (b) eventually necessitate additional police, a new fire engine, and an addition to or the construction of a new school, and (c) create a density of population which would be injurious to safety in the event of an atomic attack. Of course these contentions are absolutely devoid of merit. These contentions would be even more applicable to every residential district in that township which required a minimum lot area of ½ or ¼ or ⅛ of what is required in this particular district, and if these were essential requirements for

one acre in order to comply with health or safety or general welfare, the ordinance in its application to the other residential districts in this Township was obviously unconstitutional. Moreover, such an unconstitutional concept and application of the police power would likewise apply to *every* suburban area, district, township and county and would stifle and in reality effectually block the expansion of our country's rapidly growing population into any suburban township or county, or would herd the poor and medium income people into specified areas and effectually and intentionally limit parts or all of a county to the rich or well-to-do. Such an intentional and exclusionary interdiction is contrary to our constitutional guarantees and to the American Way of Life. It is clear that the aforesaid theories and contentions of the zoning authorities, even if supported by testimony—which they were not—(1) are for the benefit of only the rich or well-to-do and are not for the general welfare, and (2) have no substantial relation to and are not reasonably and clearly necessary for the health, safety or morals of the residential district involved.

The majority opinion in this case and even more clearly in *Best v. Zoning Board* (handed down herewith) base their decision in the last analysis upon the proposition of *unlimited* police power and its derivative, general welfare. I believe this is the most pernicious doctrine ever enunciated in Pennsylvania. The majority opinion says:

"We ourselves have a number of times upheld the constitutionality of zoning ordinances which *bore no reasonable relation* to the health, safety, or morals of the community but whose constitutional validity rested *alone* upon their promotion of the general welfare. In Landau Advertising Co., Inc. v. Zoning Board of Adjustment, 387 Pa. 552, 128 A. 2d 559, we sustained as

constitutional a zoning ordinance which prohibited certain types of outdoor advertising signs from being erected on buildings even in commercial zones of the city involved. An ordinance which prohibited the erection of billboards in residential districts was held to be constitutional in Liggett's Petition, 291 Pa. 109, 139 A. 619. The exclusion of buildings devoted to business uses from residential districts was deemed a constitutional exercise of the police power: Ward's Appeal, 289 Pa. 458, 137 A. 630. A zoning ordinance which prohibited the construction of row housing was upheld in Dunlap Appeal, 370 Pa. 31, 87 A. 2d 299." This is an inaccurate statement of the law and is not supported by the cases cited; furthermore, even if it had been so supported, it would be contrary to all the recent zoning decisions of this Court hereinabove mentioned and also to *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U. S. 579.[9]

In *Liggett's Petition,* 291 Pa. 109, the ordinance prohibited the erection of *large billboards* in a *residential* district. *The enabling Act* authorized the Second Class City to regulate and restrict the *location of trades* and industries by ordinances and to designate the trades and industries which shall be excluded from a particular district. The sign erected by defendants was *300 feet long* and from 30 to 35 feet high. It was equipped with electrical appliances, transformers, flashes, fuse boxes, and time clocks for the purpose of utilizing the electric current in an effective manner day and night. It carried the name "CHANDLER" in white letters 24 feet high to advertise the car of the Chandler Motor Company. The Court properly held that a city could restrict from *residential* districts, trades and industries, and that *this enormous bill-*

---

[9] See infra.

*board was a trade* within the meaning of the ordinance. It is well settled by decisions of this Court and of the Supreme Court of the United States that trades and businesses, apartment houses and industrial uses may be prohibited in a residential district because, as the cases specifically say, *the health and safety of the residents would be thereby affected.*

The majority opinion next relies on *Ward's Appeal,* 289 Pa. 458, which similarly excluded "buildings devoted to public uses" from residential districts. This was properly sustained because health and safety were affected. In that case, the Court said (pages 463-464): "In the case to which we refer, [*Village of Euclid v. Ambler Realty Company,* 272 U. S. 365], speaking of a provision like the one here particularly involved, the federal Supreme Court said: '. . . The decisions enumerated in the first group cited above agree that the exclusion of buildings devoted to business, trade, etc., from residential districts, *bears a rational relation to the health and safety of the community.*'"

*Dunlap Appeal,* 370 Pa. 31 (next relied on), properly sustained a zoning ordinance which *prohibited* the construction of row housing. The owner asked for a variance, but subsequently also contended that the prohibition of row housing was an unreasonable classification and consequently unconstitutional. This Court sustained the ordinance and the classification because "Improvement in light, air, fire traffic and many other conditions which the Zoning Board found to be present when row houses are restricted, form an ample basis for a reasonable preference." The test there applied was health and safety and reasonableness of classification.

The next case cited was *Landau Advertising Co. v. Zoning Board,* 387 Pa. 552. Assuming, arguendo, that this case was wisely decided, the question involved was

whether the erection of a billboard 15 feet high and 42 feet wide for general advertising purposes, was *an accessory use* to the operation of the business which was conducted on that property. This Court held that the sign could not be erected, and based its opinion almost entirely upon the fact that *it was not a use incidental or accessory* to the main use to which the premises were being devoted. Justice CHIDSEY then correctly said: "It has long been settled that the *unique nature* of outdoor advertising and *the nuisances* fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the *separate classification* of such structures for the purposes of governmental regulation and restriction [citing a number of cases including decisions of the Supreme Court of the United States]."

*Berman v. Parker,* 348 U. S. 26, which is greatly relied upon by the majority opinion, involved the management by Congress of the unique District of Columbia and is likewise clearly distinguishable. In that case a Redevelopment Authority condemned land as *a slum area.* Obviously a slum area injuriously affects the health and morals of the people living therein. The Authority took the land in question by eminent domain proceedings *paying* just compensation for the same as required by the Constitution. Of course the Authority had the power to condemn such land and to make the new land clean and beautiful, but obviously the language applicable to such a situation is entirely different from a zoning case.

The present case is a concrete local example of the cry for land and homes which, because of the rapidly increasing and expanding population, is worldwide. In this case the fight has taken the form of a battle between the State, which is constantly attempting to expand the power of Government, and the rights of indi-

viduals to own, enjoy, use and protect their own property in any way they desire, so long as it does not interfere with their neighbor's property—an ageless, everlasting struggle which began before Magna Charta and is now intensely vexing peoples and governments all over the world.

The people of this Country long before and ever since we became a Nation have constantly fought against a curtailment (a) of their unalienable Rights of Liberty which were proudly proclaimed in the Declaration of Independence, and (b) of private property, which were ordained and guaranteed in the Constitution of the United States.[10]

Nearly every property owner objects to down-grading the residential neighborhood of which he is a part, or allowing anything which would change its quiet, peaceful, exclusive tone. But we sometimes forget that the Constitution is not "a fair weather friend"—a Rock of Gibraltar when it guarantees what we presently desire to do or believe in, and "a scrap of paper" when it restrains or prohibits what we presently desire to do or believe in.

An owner of land may constitutionally make his property as large and as private or secluded or exclusive as he desires and his purse can afford. He may, for example, singly or with his neighbors, purchase sufficient neighboring land to protect and preserve by restrictions in deeds or by covenants inter se, the privacy, a minimum acreage, the quiet, peaceful atmosphere and the tone and character of the community which existed when he or they moved there. But Government, as such, or through any of its local agencies, possesses

---

[10] Fifth Amendment to the Constitution; Article XIV, §1 of the Constitution; Article I, §1, and §9 of the Constitution of Pennsylvania.

no such right. It cannot constitutionally restrict or burden or use land, except under a *Legitimate* exercise of the police power; it can take land for a proper public use by purchase or by eminent domain proceedings and then only by *paying* just compensation therefor as required by the Constitution. The present Ordinance is obviously and intentionally intended to exclude from this area the poor and medium income people. It has no substantial or clear and necessary relationship to health or safety or morals, and it is obviously for the welfare of the few and not for the public, and for these reasons it is obviously, under the evidence in this case, *un*constitutional.

*Unlimited police* power or its derivative, unlimited "general welfare", never has been and never must be adopted in this Country. We all know that every civilized Government must have police power, otherwise there would be anarchy. The police power exists for the general welfare of the People—not for the welfare of special or private interests—and is presumptively always exercised for their general welfare. *The Great Divide* that separates us from totalitarian governments is that in our Country neither police power nor general welfare is *unlimited*. The right of each individual to basic human freedom—freedom of religion, freedom of the press, freedom of speech, freedom of thought, the rights of private property, the right of contract, the rights of a person accused of crime, and due process—although constantly and insidiously attacked with sugar-coated slogans or heart-warming titles, cannot, under our Constitution, be ignored, erased, obliterated or destroyed. The effect of the majority opinion in this case and, we repeat, even more clearly in *Best v. Zoning Board,* is to abrogate and obliterate the fundamental rights of individual freedom and of private property, and to ignore or erase

every right which is guaranteed by the Constitution except the implied right of all-exclusive, all-powerful "general welfare".

Nearly every Act of the Legislature (except a relatively few Acts which are passed for political purposes) and nearly every Ordinance, including zoning ordinances, are passed under the sincere belief that they are for the "general welfare" of the people, but even when aided by the presumption of constitutionality, that does not make them constitutional—each must pass the test: "Is it reasonably and clearly necessary for the health or safety or morals of the people?"

The new doctrine enunciated by the present majority opinion that the sole or omnipotent test of constitutionality of a zoning ordinance is whether it is for the "general welfare" of the district, obliterates "health, safety and morals" and ignores the principle of ejusdem generis, which requires it to be considered with, and to have a direct connection with, health, safety or morals, i.e., it must be for the general welfare of the people as distinguished from special or private interests, and it must bear a substantial relation to and be necessary for the preservation of the public health, safety or morals of the community. This new doctrine repudiates the basic principles enunciated in, and, by necessary implication, overrules a myriad of cases of this Court including our recent cases of *Archbishop O'Hara's Appeal*, 389 Pa., supra; *Schmalz v. Buckingham Township Supervisors & Zoning Board of Adjustment*, 389 Pa., supra; *Medinger Appeal*, 377 Pa., supra; as well as the leading case of *White's Appeal*, 287 Pa., supra, which has been quoted from or cited with approval by this Court in over 25 cases. This same omnipotent theory of general welfare was unsuccessfully advocated in *Archbishop O'Hara's Appeal*,

389 Pa., supra, and in *Medinger Appeal,* 377 Pa., supra, but has always heretofore been rejected.

In *Medinger Appeal* the Court, in a unanimous opinion, rejecting this new doctrine, said (pages 225-226) : "These broad general words [promoting the 'general welfare'] which are difficult to define must be construed in connection with their statutory context as well as with and subordinate to the individual and property rights which are guaranteed by the Constitution." The fact that this new doctrine of general welfare repudiates and would require us to overrule a myriad of prior decisions of this Court is further vividly demonstrated by *Archbishop O'Hara's Appeal,* 389 Pa., supra.

In *Archbishop O'Hara's Appeal,* 389 Pa., supra, the Archbishop proposed to build a school on an 18 acre lot which he bought, when the rules of the Department of Public Instruction promulgated for the health, safety, morals and welfare of school children, required a 26 acre lot. Furthermore, the Board of Adjustment and the lower Court found that the proposed school would affect the safety and *would not promote* the general welfare, and that a nearby site, which was owned by the same Archbishop, could meet all the requirements of the law and *would promote,* instead of injuring or jeopardizing, *the health, safety, morals and welfare of the school children and of the entire community.* The lower Court denied the application for the proposed school for the following specific reasons:

"(1) that the proposed use of the site would 'adversely affect the safety of the public by creating traffic congestion, dangers and hazards'; (2) that the proposed use would 'destroy the residential character of the neighborhood'; (3) that the widening of streets, the placement of sidewalks and street lighting necessitated by the proposed use would be expensive for the

taxpayers; (4) that the value of nearby residences would be depreciated; (5) that the size of the tract is inadequate under the recommendation of the Department of Public Instruction, and (6) that another site owned by appellant is better suited for the purpose."

Nevertheless, this Court, in a unanimous opinion, reversed the lower Court and held, inter alia, that the aforesaid facts which were found by the Board of Adjustment and by the lower Court, had no relationship whatsoever to the health, safety, morals or general welfare of the community. Of course the present majority opinion flies in the teeth of this and a score of other decisions of this Court.

The general principles of law which have been reiterated in this opinion are not confined to zoning cases, but are long and well established in every field of the law.

In *Otto Milk Company v. Washington City,* 363 Pa. 243, 69 A. 2d 399, the case is well summarized in paragraph 4 of the syllabus which states:

"4. Where a city milk ordinance provided that certain milk shall be delivered to the consumer 'in bottles only', it was *Held* that the ordinance could not properly be construed to require delivery in a glass bottle or in a transparent container and that milk could properly be delivered in an opaque container called 'Pure-Pak', made of fibre board."

Chief Justice MAXEY, speaking for a unanimous Court, said (pages 251-253):

"This Court in Flynn et al. v. Horst, 356 Pa.[11] 20, 25, 51 A. 2d 54, quoting from an earlier opinion stat-

---

[11] Section 2 of the Act of May 29, 1901, P. L. 327, as amended by the Act of June 5, 1913, P. L. 412, to the extent that it imposes a license fee of $500. upon wholesale dealers in oleomargarine and $100. upon retail dealers, was held to be unconstitutional.

ed: ' ". . . while it is for the legislature to determine in the first instance what laws and regulations are needed to carry out these ends, *the courts may determine whether the regulations have some reasonable relation to those ends.*" ' We also there stated that: 'The reasonableness of a "police regulation" of any business depends chiefly on the circumstances on which the regulation operates. *No police regulation should be allowed to "interfere with the enjoyment of individual rights beyond the necessities of the case*": Reduction Company v. Sanitary Works, 199 U. S. 306, 318.' We quoted from the case of Leonard v. State, 100 Ohio St. 456, 157 N.E. 404, where Justice WANAMAKER, speaking for the Supreme Court of Ohio said: *'The measure of police power must square with the measure of public necessity.* The public need is the pole-star of the enactment, interpretation and application of the law. . . .' We also quoted the following from White's Appeal, 287 Pa. 259, 134 A. 409: 'While the tribunal to determine the proper exercise is in the first instance the legislature, the ultimate decision rests with the courts. If after investigating there is doubt as to whether the statute is enacted for a recognized police object, or if, conceding its purpose, *its exercise goes too far,* it then becomes the judicial duty to declare the given exercise of the police power invalid (citing cases). *"The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.* In other words, its determination as to what is a proper exercise of its police power is not final or conclusive, but is subject to the supervision of the courts" ' (citing cases)."

In *Miller v. Beaver Falls,* 368 Pa. 189, 82 A. 2d 34, this Court declared that an ordinance which superimposed a park upon a confirmed plan of a city should

be void unless the land was acquired by Council within three years, was unconstitutional. The Court in a unanimous opinion said (page 198) : " '. . . All that is beneficial in property arises from its use and the fruits of that use, and whatever deprives a person of them deprives him of all that is desirable or valuable in the title and possession. It is not necessary, in order to render a statute obnoxious to the restraints of the constitution, that it must, in terms or in effect, authorize an actual physical taking of the property or the thing itself, so long as it affects its free use and enjoyment, or the power of disposition at the will of the owner.'

"As Mr. Justice HOLMES said in his opinion in Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 415, 43 S. Ct. 158 (in which he declared the Kohler Act of May 27, 1921, P. L. 1198 unconstitutional) : 'The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. Hairston v. Danville & Western Ry. Co., 208 U. S. 598, 605. When this seemingly absolute protection is found to be qualified by the police power, *the natural tendency of human nature is to extend the qualification more and more until at last private property disappears.* But that cannot be accomplished in this way under the Constitution of the United States.'

" 'While such regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation. *"We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change"*: Pennsylvania Coal Co. v. Mahon, 260 U. S.

393, 416'; White's Appeal, 287 Pa. 259, 266, 134 A. 409." See to the same effect: *Rolling Green Golf Club Case,* 374 Pa. 450, 97 A. 2d 523.

In *Commonwealth v. Zasloff,* 338 Pa. 457, 13 A. 2d 67, the decision of this Court is well summarized in the following portion of the syllabus:

"1.   The Fair Sales Act of July 1, 1937, P. L. 2672, which prohibits the sale of any merchandise at less than cost by retailers or wholesalers, is in violation both of the 14th Amendment of the Federal Constitution and of Article I, section 1, of the Declaration of Rights of the State Constitution.

"2.   The right of an owner of property to fix the price at which he will sell it is an inherent attribute of the property itself, and as such within the protection of the 14th Amendment."

Justice, later Chief Justice, STERN, speaking for a unanimous Court, said (page 460):

*"But in these, as in all cases, the police power is not unrestricted; its exercise, like that of other governmental powers, is subject to constitutional limitations and judicial review, otherwise we would have an absolute instead of a constitutional scheme of government.   It has frequently been stated by federal and state courts alike that a law which purports to be an exercise of the police power must not be arbitrary, unreasonable or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the object sought to be attained:* Mugler v. Kansas, 123 U. S. 623, 661; Chicago, Burlington and Quincy Railway Co. v. Drainage Commissioners, 200 U. S. 561, 593; Nebbia v. New York, 291 U. S. 502, 525, 537, 539; Mahon v. Pennsylvania Coal Co., 274 Pa. 489, 497; White's Appeal, 287 Pa. 259, 265; Breinig v. Allegheny County, 332 Pa. 474, 483.   *'The legislature may not, under the guise of pro-*

*tecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupation'*: Lawton v. Steele, 152 U. S. 133, 137; Otis v. Parker, 187 U. S. 606, 608; Burns Baking Co. v. Bryan, 264 U. S. 504, 513."

In *F-K Market House Company, Inc. v. Reading,* 310 Pa. 493, 165 A. 398, the Court said (pages 502-503):

"In Harris v. State Board of Optometrical Examiners, 287 Pa. 531, 536, 135 A. 237, this court said: 'The legislature under the police power does not possess the power to enact rules which have no substantial relation to the end to be attained. . . . *Legislatures do not have the power, under the guise of police regulation, to arbitrarily invade the personal right and liberty of the individual.* Its determination of the extent of its power is not final or conclusive: White's App., 287 Pa. 259 [134 A. 409]. If it pass an act, ostensibly in the exercise of the police power, but which unnecessarily interferes with the personal liberty of the citizen, the courts may examine the act and determine whether it relates to the objects which the exercise of the police power is designed to, and does, secure.' "

In *Hertz Drivurself Stations, Inc. v. Siggins,* 359 Pa. 25, 58 A. 2d 464, this Court declared unconstitutional a statute requiring a certificate of public convenience from the Public Utility Commission by one desiring to engage in the business of renting motor vehicles. Justice, now Chief Justice, JONES, speaking for a unanimous Court, said (pages 46-50):

"In Commonwealth v. Zasloff, 338 Pa. 457, 13 A. 2d 67, Mr. Justice STERN, at p. 460, quoted approvingly from and cited United States Supreme Court cases to the effect that: ' *"The legislature may not under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unu-*

*sual and unnecessary restrictions upon lawful occupations"* ': see Jay Burns Baking Co. v. Bryan, 264 U. S. 504, 513; Meyer v. State of Nebraska, 262 U. S. 390, 399-400; Otis v. Parker, 187 U. S. 606, 608; Lawton v. Steele, 152 U. S. 133, 137; also Nolan v. Jones, 263 Pa. 124, 128, 106 A. 235. . . .

". . . As the highest attribute of government (Salus populi est suprema lex), *the police power must, at all times, be exercised with scrupulous regard for constitutionally guaranteed private rights."*

In *Commonwealth ex rel. Woodside v. Sun Ray Drug Co.,* 383 Pa. 1, 116 A. 2d 833, this Court held that in the absence of any evidence of customer confusion between Malt-A-Plenty base and ice cream and of any sales of Malt-A-Plenty base as ice cream, its possession or manufacture could not be restrained as a violation of §2 of the Ice Cream Law (which prohibits the sale of any ice cream which is adulterated and of any imitation ice cream or ice cream substitute, as defined in the Act). A unanimous Court, speaking through Justice CHIDSEY, said (pages 10-11) :

"The standard to be applied in this type of case was well stated by Mr. Chief Justice STERN in the recent case of Cott Beverage Corporation v. Horst, 380 Pa. 113 (1955), 110 A. 2d 405. In that case the Chief Justice, quoting from Gambone v. Commonwealth, 375 Pa. 547, 101 A. 2d 634, stated at p. 118: ' ". . . By a host of authorities, Federal and State alike, it has been held that *a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case,* and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests, the legislature may not arbitrarily interfere with private business or impose unusual or unnecessary restrictions

upon lawful occupations. The question whether any particular statutory provision is so related to the public good *and so reasonable in the means it prescribes as to justify the exercise of the police power,* is one for the judgment, in the first instance, of the law-making branch of the government, but its final determination is for the courts" '."

Thoughtful analysis will further demonstrate—even without any confirmation by a myriad of cases—the basic error of the majority's doctrine that General Welfare is the absolute, unlimited and unfettered test which is to be applied in determining the constitutionality of an Act or ordinance. For example, when a suspected murderer is captured and is detained and questioned by the police, it is obvious that this is done under the police power and for the safety and general welfare of society. There cannot be a stable government in our Country without law and order, and the police power which protects the safety, the order and the health of the community. Nevertheless, when the Courts free such suspected felons, they do not apply "the police power" or "general welfare"; they *invoke due process and the fundamental rights which are guaranteed to every American citizen by the Constitution.* See for example: *Watts v. Indiana,* 338 U. S. 49; *Turner v. Pennsylvania,* 338 U. S. 62.

*If* police power or general welfare were *unlimited,* virtually every right of liberty, every right of property, and every right to a free press, and to due process, as well as all the other fundamental rights which are ordained in and guaranteed by the Constitution would soon be superseded, abrogated and extinguished by "general welfare".

*The theory of police power or general welfare as absolute and unlimited* was utterly rejected and completely demolished by the latest *pertinent* decision of the

Supreme Court in *Youngstown Sheet and Tube Co. v. Sawyer,* 343 U. S. 579. In that case President Truman, as President of the United States and as Commander-in-Chief, ordered the Secretary of Commerce to take *temporary* possession of and supervise the operation of most of the Nation's steel mills during the National emergency. The Government averred "that his action was necessary to avert a national catastrophe [a strike] which would inevitably result from a stoppage of steel production, and that in meeting this grave emergency the President was acting within the aggregate of his constitutional powers as the Nation's Chief Executive [including the performance of his duty under the Constitution to 'take care that the laws be faithfully executed'] and the Commander-in-Chief of the Armed Forces of the United States"; "as well as his power under several Acts of Congress," and *"his general welfare power to protect the health and safety of the Nation".* The Government contended "that a strike disrupting steel production for even a brief period would so endanger the well-being and safety of the Nation that the President had 'inherent power' to do what he had done—power 'supported by the Constitution, by historical precedent, and by court decisions.'" Nevertheless, the Court rejected these contentions and issued an injunction restraining the President and his aides.

Township Commissioners, whose very existence may be abolished at any moment at the will or whim of the Legislature, are,—so far as police power and general welfare are concerned,—very many miles removed from the President of the United States. If the President of the United States and Commander-in-Chief has no inherent, implied, incidental or any other Constitutional power, whether *under General Welfare or Police Power* or under the duties and powers of the highest office in our land, or under the many powers granted

him by Congress, to *temporarily* and in a National emergency, abrogate or violate or supersede or extinguish rights of private property, it should be obvious that Township Commissioners, under the guise of police power or general welfare, cannot permanently abrogate or violate or supersede or extinguish the Constitutional rights of liberty and property which are guaranteed to every American citizen.

For these reasons I vigorously dissent.

Mr. Justice MUSMANNO and Mr. Justice BENJAMIN R. JONES join in this dissenting opinion.