## Buckingham Township v. Bary

*William H. Satterthwaite, Jr.*, for plaintiff.

*William M. Power*, for defendants.

FULLAM, J., March 11, 1960.—In this equity proceeding, the Board of Supervisors of Buckingham Township seek to restrain defendants, Howard Y. Bary and Augusta W. Bary, from operating a zoo in alleged violation of the township zoning ordinance. Plaintiffs agree that defendants have a right to keep wild animals and reptiles on their property, but contend that exhibition of same to the public "for commercial purposes" is forbidden. . . .

### Discussion

The defense in this case is based upon the provisions of the zoning ordinance relating to nonconforming uses. The applicable provisions are as follows:

"Section 800. Nonconforming Buildings or Uses.

"1. *Continuation.* Any lawful use of a building or land existing at the effective date of this Ordinance may be continued although such does not conform to the provisions of this Ordinance. . . .

"3. *Changes.* A nonconforming use of a building or land may be changed to a nonconforming use of the same or more restricted classification. . . ."

Defendants argue, (1) that their present activities are merely a continuation of a preëxisting nonconforming use of the premises, and (2) alternatively, that even if their present use is different from the previous use, it amounts to a change to a use of the same classification, and is therefore permissible.

Only the first of these defenses can be raised in this equity action. Section 1001 of the ordinance contains the following:

"Section 1001. *Requirement of Permits.* A permit shall be required . . . prior to the change or extension of a nonconforming use."

Since the ordinance provides the administrative machinery to enable defendants to test their right to change a nonconforming use, the procedures thus established constitute the sole and exclusive method and forum for such determination: Philadelphia v. Budney, 396 Pa. 87 (1959). There is no pretense that defendants ever obtained a permit for a change in use, so that even if they could raise in defense their alleged right to change the use, it would not be a sufficient defense. They would still be in violation of the ordinance and could properly be enjoined from continuing the changed use without a permit.

However, unlike the ordinance involved in the Budney case, supra, the Buckingham Township Zoning Ordinance here involved contains no provisions for the registration of nonconforming uses, and requires permits only for new uses or changes in use occurring after the effective date of the ordinance. Accordingly, this ordinance provides no administrative machinery whereby defendants' right to continue the *same* nonconforming use might be determined. We therefore conclude, notwithstanding certain dicta in the Budney opinion, supra, that if the activities sought to be enjoined constitute the continued operation of a valid

nonconforming use antedating the ordinance, such fact can be raised in defense in equity. Cf. Fox v. Zoning Board of Adjustment, 4 Bucks 260, 268 (1955); Solebury Township v. New Hope Limestone Co., 9 Bucks 35 (1959).

The decision in the present case, therefore, turns upon two questions: [1] Is the present use of their property by defendants substantially the same as their use of the property prior to November 24, 1951, and [2] if so, was that use "lawful"?

It is conceded by both sides that wild animals, reptiles, and exotic birds were housed or stored on the Bary property, in varying quantities but with sufficient continuity to constitute a kind of permanence, for many years prior to the passage of the zoning ordinance in 1951. It is equally clear, and admitted, that the practice of charging admission to the property was not instituted until 1955.

And while the record is not free from conflict on the subject, the chancellor has little difficulty in concluding that: (a) Cages and other appropriate temporary structures for the display of specimens were located on the property prior to November 1951; (b) members of the public were permitted to, and did, visit the property to see the specimens, intermittently, whenever defendants were present; (c) and such visitors were permitted to, and did, deposit "donations" in a plate or basket provided for the purpose, on a voluntary basis, in consideration of or gratitude for the privilege of examining the animals; (d) during the period from 1934 to 1953 defendants were frequently absent from the property for extended intervals; (e) most of defendants' neighbors knew that animals were kept on the property, although many were not aware, before the passage of the ordinance, that the animals were being exhibited there; (f) following a television

program in 1955 featuring defendants' establishment, there was a sharp increase in the number and frequency of visitors to the premises; and (g) defendants did little or no paid advertising prior to the passage of the zoning ordinance.

Plaintiffs' theory of the case is that when defendants, in 1955, established a schedule of admission charges, set up a ticket booth at the gate, and began extensive advertising, they converted what had been the casual, incidental and nonprofit exhibiting of the animals into a "commercial business." While this may be true as a matter of economics, the analysis sheds very little light on the problem before us. Zoning ordinances have to do with the use being made of a property, not whether such use is profitable.

The fact remains that the housing of wild animals on the Bary property, whether for resale, transportation, or exhibition on the premises, was not a permitted use under the Buckingham Township Zoning Ordinance. Since defendants exhibited these specimens on the premises, and permitted and invited members of the public to visit the property and view the specimens, before the passage of the ordinance, the use of the property for such purpose was nonconforming, and the continuation of that use cannot be enjoined.

The situation might be compared to a theater operated by an amateur theatrical group. Surely, if such an establishment were in operation before the zoning ordinance, the fact that thereafter the management adopted a policy of selling tickets at the door, rather than taking up a collection during intermission, could not seriously be advanced as constituting a change in the use of the property.

A similar question arose in the case of Easttown Township v. Auto Parks, Inc., 12 D. & C. 2d 33 (1940). In that case, certain parking areas adjacent to a rail-

road station which had been in existence for many years, no charge being made for parking therein, were zoned residential, and subsequently, the railroad leased same to a parking lot operator for use as a commercial parking lot. The court held this did not constitute a change in use, and stated

"The character of its nonconforming use as a parking area is not, in the opinion of this court, destroyed by charging therefor." (p. 38.)

In the case of Mutimer Company v. Wagner, 376 Pa. 575 (1954), it was held that converting a property from an office for the sale of real estate into an office for the sale of machinery did not constitute a change in use, but merely a continuation of the same use. The Supreme Court in a per curiam opinion affirmed the decision of the lower court in which it was stated that the subclassifications of uses set forth in the ordinance were controlling; and that no change in use would be involved unless the latter use did not fit into the same subclassification as the former.

If this reasoning were applied in the case at bar, then even a change from one kind of "place of amusement" (section 601-5) to another would not be such "change" as would require a permit.

But in any event, without applying the rationale of the cited case, we are satisfied that the defendants' present use of their property is substantially the same as the former use, and that no change in use within the meaning of section 1001 of the ordinance is involved.

As stated by the Supreme Court in Firth v. Scherzberg, 366 Pa. 443 (1951):

"Neither the natural growth of a business, existing at the time of the enactment of a zoning ordinance, nor the adoption thereafter of more modern instrumentalities, suitable and helpful in carrying on the

business, works a change of use in legal contemplation."

See, also, Haller Baking Company's Appeal, 295 Pa. 257; Gilfillan's Permit, 291 Pa. 358; Gaspari v. Muhlenberg Township Board of Adjustment, 392 Pa. 7 (1958).

Defendants produced the testimony of several expert witnesses to the effect that practically all privately owned zoological gardens begin by accepting donations, and later, as increase in business warrants it, charge admissions; and that the change in defendants' method of operations in 1955 represented a logical, natural step in the growth of their enterprise.

It should be noted that the case at bar does not involve the "extension" of a nonconforming use, since under the provisions of section 800-2 of the ordinance that term clearly relates to increase in area devoted to the use, rather than to increase in volume within the same area.

Having determined that the present use of the property for exhibiting zoological specimens to the public is substantially the same as the prezoning use, we come now to the question whether such use was and is "lawful" and within the meaning of section 800-1 of the ordinance, which provides for continuation of "any lawful use of a building on land . . ." Plaintiffs contend that defendants' use of the property for exhibiting animals was not "lawful" within the meaning of this language, because it violated certain provisions of the Game Law of 1937, as amended. Reference is made to the Game Law of June 3, 1937, P. L. 1225, as amended, 34 PS §1311.417, which reads as follows:

"The commission may grant permits for roadside menageries which are hereby defined as any place where one or more wild animals are kept in captivity . . . upon land, public or private, adjoining any street

or highway . . . for the evident purpose of exhibition or attracting trade.

"The term 'roadside menagerie' shall not include the exhibition of any animal by any educational institution or in any zoological garden. . . .

"It is unlawful for any person to keep any wild animal in captivity . . . upon land, public or private, adjoining any street or highway . . . for exhibition or the evident purpose of attracting trade, or to have any wild animal in his custody or control for such purpose, unless a permit has been issued by the commission."

Defendants do not have, and never did have, a permit under this act.

While the last sentence above quoted, standing alone, might seem to apply to these defendants (since they do have animals in their "custody or control" for the purpose of exhibition), a reading of the statute as a whole convinces us that the type of establishment here involved was not intended to be covered by this legislation. The Bary establishment is clearly not a roadside menagerie, as defined in the statute.

By so holding, we are not to be understood as accepting the premise that a use of land would necessarily not be "lawful" under the nonconforming use section of a zoning ordinance if in fact it were violative of the permit requirements of a regulatory statute such as the above. On this question, we expressly refrain from voicing an opinion.

For the foregoing reasons, we enter the following

## Conclusions of Law

1. Defendants' use of the fenced-in area of their property as a zoological garden for the exhibiting of wild animals, reptiles, birds and other zoological specimens, including the selling of tickets for admission

thereto and dispensing refreshments therein, is not in violation of the Buckingham Township Zoning Ordinance.

2. The complaint should be dismissed.

### Decree

And now, March 11, 1960, for the reasons set forth in the foregoing adjudication, the complaint is hereby dismissed.

This decree shall be entered as a decree nisi, and shall become the final decree of this court unless exceptions thereto are filed within 20 days after service of a copy hereof upon counsel of record.