Upper Moreland Township *v.* Meade, Appellant.

Argued October 5, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Knox Henderson,* with him *John F. Solomon, Jr.,* and *Henderson, Wetherill & O'Hey,* for appellants.

*Samuel H. High, Jr.,* with him *High, Swartz, Roberts & Seidel,* for appellee.

*John P. Knox,* for intervening plaintiffs, appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 22, 1966:

On April 2, 1962, the defendant, Allan F. Meade, entered into an agreement to purchase a certain tract of land in Upper Moreland Township in Montgomery County from H. Lyle Houpt and Catharine Fox Houpt, his wife. The agreement was contingent on the township board of adjustment granting a special exception or variance in order that Meade or his nominee might construct one colonial office building and five colonial apartment buildings. On April 6, 1962, Houpt filed an application with the board of adjustment for permission to build the proposed structures. On May 26, 1962, the board of adjustment granted permission, but imposed the following restrictions: "1. That in accordance with Section 608 paragraphs nos. 1 & 2 the apart-

ment house or group of apartment houses and (b) professional office shall be considered as an integrated use. 2. Each apartment and/or professional office shall contain a minimum of 800 sq. ft. of floor area per family, or per office. 3. Not more than 30% of the lot area may be occupied by buildings. 4. There shall be two side yards and a rear yard each of which shall be no less than 30 ft. however, this area may be used for parking space. There shall be a front yard the depth of which shall be at least 40 ft. and this space may also be used for parking. 5. There shall be one driveway for ingress and a separate driveway for egress. 6. Off street parking spaces shall be provided at a min. of one and one-half spaces per apartment and one per professional office. 7. Starting at a point forty feet from the front line, the side yards and the rear yard shall be fenced with suitable chain link fencing, or its equal. 8. The height of the buildings shall be limited to two stories and the basement areas shall be used for storage and utilities purposes only and for no other purposes. ALL OTHER provisions of the Zoning Ordinance and the Building Code to be complied with."

On February 25, 1963, an agent of the appellants applied for and was issued a building permit for the erection of an office building and apartment structure containing 68 apartments. The plan submitted in support of the building permit was not the same as the plan presented to and approved by the board of adjustment. The plans submitted by the appellants to the board of adjustment depicted one professional building and five apartment buildings. However, the plans submitted for the building permits showed only two buildings, one apartment building and one office building.*

---

* The discrepancy in the plans was called to the attention of the township manager by the secretary of the zoning board, who directed her to contact the township solicitor. The township so-

Subsequent to the issuance of the building permit, the appellants commenced construction. Eight months after the commencement of construction, it was discovered by certain adjoining landowners that the construction violated the order of the board of adjustment, the local ordinance, and the plan filed in support of the application for a building permit. On April 2, 1964, the township commenced an action in equity, seeking to enjoin the illegal construction. Certain residents of the township were permitted to intervene and the case was heard by the chancellor on May 25, 1964. The chancellor found, among other things, the following facts:

"24. Allan F. Meade knew when he filed his plans with the building permit that the plans failed to comply with the Board of Adjustment requirement that there be compliance with the Zoning Ordinance and that there be 20 feet between buildings.

"25. That Allan F. Meade changed the location of apartments after filing his plan, without the consent or approval of the Township, by adding an apartment unit at the end of each of the two wings or buildings.

"26. That the violations of the requirement of the Zoning Board of Adjustment and the Zoning Ordinance that not more than 30% of the lot area may be occupied by buildings can be corrected by reducing the number of apartments.

"27. That the violation of the requirement of the Zoning Ordinance can be partially remedied by reducing the number of apartments.

licitor was H. Lyle Houpt, who in addition, was (a) the applicant before the board of adjustment, (b) the then owner of record of the property, (c) counsel for the board of adjustment, and (d) counsel for the defendant, Allan F. Meade and Northgate Professional Center, Inc., and without examination of the plans submitted, he advised the secretary of the zoning board that the application for the permit should be granted,

"28. That the violations of the Zoning Ordinances requiring the distance between buildings to be twenty (20) feet and the length of any building to be not more than five times the height, can be partially remedied without complete demolition of the existing buildings. The financial condition of the defendants would render it impossible for a complete demolition of the existing buildings."

The chancellor, in his decree nisi, ordered that 2 apartments from each wing of the apartment building be removed (a total of 4 apartments), which removal he concluded would cause the structures to conform substantially to the order of the board of adjustment, and the approved plans. Appellants' exceptions to the adjudication were dismissed and the decree nisi entered as a final decree; this appeal followed.

The first issue raised by the appellants is that the court of equity has no jurisdiction because the proper attack would have been an appeal from the issuance of the building permit. Thus, the appellants argue that the plaintiffs had an adequate remedy at law as provided in §3107(d) of the First Class Township Code. This section provides for an appeal to the board of adjustment within a time provided by the board; which, in this case, would have been 30 days. Had the appellees appealed the issuance of the building permit within the 30 day period, the appellants allege they would not have relied on the permit and made a substantial financial commitment. This argument, however, is not persuasive, the cause of action being used on appellants' failure to perform in accordance with the plans upon which the permit was issued. The appellees admit that they could not avail themselves of equity to attack the differences between the building permit and the conditions imposed by the board of adjustment after the expiration of the 30-day appeal period; but what they are attacking is the differences between the build-

ing permit plan and the actual construction. We believe that if a building is constructed at variance with an approved building permit, the only remedy available to persons aggrieved is the courts of equity. It would be unjust to hold that the remedy for an illegal construction is an appeal from the issuance of the building permit, because this would defeat the purpose of building permits. To allow the appellants' arguments to prevail would permit an unscrupulous builder to acquire a building permit, wait 30 days, and then build in complete defiance of the building permit. This interpretation would nullify the control which the building permit procedure was established to provide. It is clear that equity has jurisdiction to enjoin construction which violates a zoning ordinance or board of adjustment order or building permit. *Philadelphia v. Wyszynski*, 381 Pa. 153, 112 A. 2d 327 (1955).

The second point raised by the appellants is that the appellants were justified in relying on the apparent acceptance of the construction by the building inspector and zoning officials. These officials visited the construction site several times during construction and prior to the filing of the complaint in equity. Appellants argue that the township officials never voiced any objection to the construction, and the appellants expended large sums of money, relying on the acceptance of the work by these officials. Under normal circumstances, these arguments would have merit (assuming, of course, the officials acted fairly in accepting the construction). However, in this case, it is important to note the dual relationship of Houpt, as solicitor for the board of adjustment and counsel for the appellants in the initial stages. It would also appear that the actions of the building inspector in accepting an illegal construction should not bind the intervenors in this case who were not privy to the inspector's reports. This is not a case of "vested rights" in a build-

ing permit, as the appellants assert, and as was the case in *Cheltenham Twp. Appeal,* 413 Pa. 379, 196 A. 2d 363 (1964). This is a case where the actual construction violated the building permit, the building permit itself is not under attack.

The third issue raised by the appellants is that the intervenors are guilty of laches in that they permitted the construction to be substantially completed before taking any action. The record indicates that the intervenors were aware of violations in the construction two months prior to any notification to the appellants. However, the evidence which establishes the knowledge of the intervenors two months prior to notification also indicates that the intervenors attempted to proceed by official channels, a course of action which eventually proved productive, because the township, after two months, filed this suit. In addition, it should be pointed out that the appellants produced no evidence to show that the failure of intervenors to notify the appellants that they were building in violation of their own building permit plan was in any way detrimental to the appellants.

The final point raised by the appellant is that the violations were not substantial and did not warrant the action taken by the chancellor. The chancellor, however, found that the plan submitted with the building permit showed that the percentage of lot that would be occupied by the proposed building would be 29.988%, while the construction actually covered 35.9% of the lot area. In addition thereto, the chancellor found that the construction violated at least four other requirements of the board of adjustment. It requires no citation of authority for the proposition that the findings of fact of a chancellor approved by the court en banc will not be reversed on appeal if based upon sufficient evidence and not based on erroneous inferences or deductions. The chancellor's findings, af-

620

firmed by the court en banc, are amply supported by the evidence, and the conclusions of law follow inexorably from the findings of fact. We must, therefore, agree that the violations in this case were substantial and that the chancellor acted properly when he determined that the removal of the four end apartments would cause the construction to be in substantial conformance.

Decree affirmed, costs on appellants.