Honey Brook Township *v.* Alenovitz, Appellant.

Argued April 29, 1968. Before BELL, C. J., MUS-MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused July 29, 1968.

*Edward N. Barol,* with him *Glenvar E. Harman,* and *Harman & Pine,* and *Kanner, Stein, Feinberg & Barol,* for appellants.

*John E. Good,* for appellee.

*Robert A. Mills, G. Thomas Miller,* and *McNees, Wallace & Nurick,* for amicus curiae.

OPINION BY MR. JUSTICE O'BRIEN, July 1, 1968:

This case arises out of a complaint in equity filed on October 26, 1966, by the Township of Honey Brook, County of Chester, against George C. Alenovitz, Jean E. Alenovitz, his wife, Clement Alenovitz and Elizabeth Alenovitz, his wife, in the Court of Common Pleas of Chester County, praying for an injunction enjoining the defendants from operating, establishing or constructing a trailer park on three tracts of land (about twenty-three acres) located in the Township of Honey Brook and to remove all facilities and equipment placed on the premises. A preliminary hearing was

held on November 7, 1966 and a preliminary injunction was granted that same day. A final hearing was held on February 14, 1967 and a decree nisi granting the permanent injunction was ordered on September 29, 1967. Exceptions were filed and the decree nisi was entered as a final decree on January 25, 1968. From that final decree this appeal was taken.

The Township of Honey Brook is a second class township located in Chester County, Pennsylvania. On or about July 2, 1962 the supervisors of the township conferred upon the planning commission the power of a zoning commission, with the duty to prepare a comprehensive plan for the township.

On or about January 31, 1966, the planning commission delivered the comprehensive plan to the board of supervisors. Meetings were held on the comprehensive plan in March, and the plan was adopted in that month.

On June 2, 1966, at 3:54 p.m., there was filed in the office of the prothonotary of Chester County a petition purported to be signed by the owners of at least fifty-one percent of the assessed valuation of real estate of Honey Brook Township. The petition expressed opposition to the enactment of the proposed zoning ordinance and requested that it not be enacted into law. On the evening of June 2, 1966, between 8:00 p.m. and 10:00 p.m., the supervisors, despite the filing of the protest, enacted the zoning ordinance. By virtue of that zoning ordinance, the land owned and leased by appellants, the subject of this action, was zoned "Farm Residential." Under the ordinance, trailer parks were permitted only in districts zoned "Neighborhood Commercial", when allowed by special exception.[1]

---

[1] The finding of fact of the chancellor was that trailer parks were permitted in industrial districts also. We find no support for that in the ordinance.

In addition to the zoning ordinance, one other ordinance adopted by the township has relevance to this action. On or about July 1, 1965, the township adopted Ordinance No. 8, regulating trailer parks and carrying a licensing fee of $5 per trailer.

On or about December 20, 1965, appellants commenced the establishment of the trailer park in question. However, by June 2, 1966, appellants had spent only $2,000 on construction of the proposed trailer park, although the total contemplated cost was between $300,000 and $400,000. On April 7, 1966 appellants applied to the township supervisors for a trailer park license. By letter dated October 11, 1966, the township supervisors, through their duly authorized agent, advised appellants that the application was denied. The reasons assigned in the letter for the refusal were the failure to comply with §7(k) of the trailer park ordinance, the failure to pay the license fees on other parks owned by appellants, and in general, a lack of good faith. Section 7(k) requires, in the case of trailer parks not established prior to the adoption of the comprehensive plan for the preparation of a zoning ordinance for Honey Brook Township, that a statement accompany the application for establishing a trailer park stating that the premises proposed to be occupied by the trailer park are located entirely within a district in which the establishment of trailer parks is to be permitted.

When appellants persisted in their establishing of the trailer park, appellee township brought the instant action in equity seeking an injunction. The court below, finding that appellants had failed to comply with both the zoning ordinance and the trailer park ordinance, granted the injunction.

Appellants urge upon us five separate arguments as to why no injunction should have issued. We find no merit in any of these. The first is the contention

that the zoning ordinance is void as a matter of law, as it was passed after the filing of a protest by the owners of at least fifty-one percent of the assessed property valuation in Honey Brook Township.[2] We are in complete accord with the court below that the protest was ineffective, since it protested only against the enactment of the specific ordinance, whereas the Code requires a protest against the exercise of zoning powers generally. The court below expressed our view in pointing out that the distinction is not merely a technical one, for it is likely that some signers of the protest were not opposed to the exercise of zoning powers under all circumstances, but rather to specific provisions of the instant ordinance.

Appellants' second contention is that the zoning ordinance is unconstitutional since it allegedly in effect prohibits a legitimate business in the township and constitutes spot zoning. In the first place, we are of the opinion that the constitutionality of the zoning ordinance cannot be raised in this equity proceeding. In *Jacobs v. Fetzer*, 381 Pa. 262, 112 A. 2d 356 (1955), this Court indicated that questions involving the constitutionality of zoning ordinances should not be heard by courts of equity, but should be tested through the ordinary zoning channels—application to the board of adjustment, in the first

---

[2] The Second Class Township Code, 53 P.S. §67001, Act of May 1, 1933, P. L. 103, §2001, added 1947, July 10, P. L. 1481, §47, as amended, after granting zoning power to second class townships, reads as follows: "No Ordinance shall be adopted to carry out the power hereby granted during the period of two years immediately after the date when the taxpayers, whose property valuation as assessed for tax purposes, within the Township, amounts to 51 percentum or more of the total property valuation as assessed for tax purposes within the Township, shall sign and file in the Office of the Prothonotary of the County in which the ownership is located, a written protest against the exercise of such powers."

instance, for relief, followed by an appeal to the common pleas court from the board's denial of relief. It is true that *Jacobs v. Fetzer*, supra, was a case in which the aggrieved property-owner, rather than the municipality, brought the equity action. Nonetheless, it expressed the view that the property owner should proceed through normal zoning channels. Here, appellants took no appeal from the denial by the board of supervisors of their application for a trailer park permit, and thus failed properly to raise the issue of the constitutionality of the zoning ordinance.

Moreover, it is clear that even if they properly raised it, they have failed to prove the unconstitutionality of the ordinance. The same presumption of constitutional validity that attends an act of the legislature is equally applicable to municipal ordinances whether they be enacted by the council of a city, town, or borough or by the commissioners or supervisors of a township. *Nat. Land & I. Co. v. Easttown Twp. Bd. of A.*, 419 Pa. 504, 522, 215 A. 2d 597 (1965); *Bilbar Const. Co. v. Easttown Twp. Bd. of A.*, 393 Pa. 62, 71, 141 A. 2d 851 (1958). That presumption has been expressed as follows: "An Act of Assembly will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violates the Constitution." *Daly v. Hemphill*, 411 Pa. 263, 271, 191 A. 2d 835 (1963) (Emphasis in original. Appellants have come nowhere near meeting this burden. They rely heavily on *Exton Quarries, Inc. v. Zoning Bd. of Adj.*, 425 Pa. 43, 228 A. 2d 169 (1967). That case is inapposite here. In *Exton*, we held that a zoning ordinance which *totally excludes* a particular business from an entire municipality must bear a more substantial relationship to the public health, safety, morals and general welfare than an ordinance which merely confines that business to a certain area in the municipality. Even in *Exton*, we stated that the ordinance was still presumed to be con-

stitutional. In the instant case there is no total exclusion. On the contrary, the trailer parks are permitted in four "Neighborhood Commercial" districts. The mere assertion that these areas are small hardly overcomes the presumption of constitutionality. Nor is there any showing that appellants' land is unsuited for the purposes for which it has been zoned. Appellants' proof falls far short of establishing any claim of unconstitutional spot zoning.

Thirdly, appellants argue the invalidity of the trailer park ordinance.[3] In their two-pronged attack, they assert (1) that the ordinance constitutes zoning under the guise of regulating and (2) that the ordinance is unreasonable in discriminating against a class and being unrelated to health, cleanliness, comfort and safety. As to the first contention, we again agree with the chancellor's reasoning. Under The Second Class Township Code, supra, §702, cl. xxix, 53 P.S. §65729, the township is empowered: "To make such regulations, by ordinance, not inconsistent with State laws and regulations, as may be necessary for the promotion of the health, cleanliness, comfort and safety of the citizens of the township." The chancellor held, and we agree, that the trailer park ordinance is a valid health and safety ordinance wholly independent of zoning.

The broader attack is on the constitutionality of the ordinance as being special legislation and unrelated to health, cleanliness, comfort or safety.[4] The discussion above of the burden upon one who asserts the unconstitutionality of an ordinance is relevant here

---

[3] The court below held the ordinance unconstitutional insofar as it required a $5 per trailer licensing fee. The chancellor held, however, that the remainder of the ordinance was saved by its severability clause. Appellants' attack here is on that remainder.

[4] This contention is put forth most strenuously by Amicus Curiae, Pennsylvania Mobilehome Association.

also. Once again appellants have failed to meet that burden. The instant trailer park ordinance is a valid exercise of the police powers in regulating sewage, water supply, fire hazards, electrical hazards, roadways, minimum lot sizes, and similar matters. In fact, the ordinance is remarkably similar to that upheld in *Palumbo Appeal*, 166 Pa. Superior Ct. 557, 72 A. 2d 789 (1950). A similar ordinance was considered by our own Court in *Cloverleaf T. S. Co. v. Pleasant Hills Boro.*, 366 Pa. 116, 76 A. 2d 872 (1950), where all parties conceded that the trailer park ordinance was a regulatory measure in the interest of public health, safety, morals and welfare and a valid exercise of the police power. It is virtually inconceivable to us that at this late date appellants and the mobilehome industry could contend that trailer parks are not a proper classification to regulate and that an ordinance like the instant one is not a valid exercise of the police power. For other jurisdictions upholding regulation of trailer parks under the police power, see, e.g., *Cady v. City of Detroit*, 289 Mich. 499, 286 N.W. 805 (1939); *Nichols v. Pirkle*, 202 Ga. 372, 43 S.E. 2d 306 (1947).

Fourth, appellants claim that the application of the two ordinances to them is arbitrary and capricious. They point to the reason stated in the denial of the permit that appellants had been uncooperative in the past, and to the fact that a permit for a trailer park was granted on May 6, 1966, after the date of appellants' application. Actually, uncooperativeness was only one of a number of reasons given for the denial, and a perfectly valid reason was failure to comply with §7(k) of the trailer park ordinance, which required the statement that the proposed use was not violative of proposed zoning. Section 7(k) was only applicable, however, after a comprehensive plan had been adopted. The application granted on May 6, 1966 was made on March 4, 1966, whereas appellants' application was

made on April 7, 1966. The comprehensive plan was adopted between March 4 and April 7, thereby distinguishing the two cases. Since the cases are clear that a municipality may properly refuse a building permit for a land use repugnant to a pending and later lawfully enacted zoning ordinance even though the application for the permit is made when the intended use conforms to existing regulations, *Aberman, Inc. v. New Kensington*, 377 Pa. 520, 105 A. 2d 586 (1954), appellants have no complaint on this score.

Finally, appellants contend that the court below erred in issuing the injunction because appellants are entitled to a nonconforming use. As the chancellor pointed out, such a principle could only apply with regard to the zoning ordinance, for it is totally inapposite to enforcement of a trailer park ordinance. The court below held, and appellee argues, that on the authority of dictum in *Philadelphia v. Budney*, 396 Pa. 87, 151 A. 2d 780 (1959), the defense of nonconforming use cannot be raised at all in an equity action. *Budney* was a case where the City brought an action to enjoin the operation of a junkyard as violative of a zoning ordinance. Defendant set up the defense of nonconforming use. The Court held that he had already litigated the matter when he applied to the board of adjustment for a variance or a permit for a nonconforming use, and appealed from the board to the court of common pleas. Yet the court pointed out that it would have made no difference even if the defendant had not sought the variance or permit. The Court stated, at page 89: ". . . However, even if appellant had never sought a variance, he could not raise the defense of a nonconforming use in a proceeding in equity. The legislature has provided that zoning matters are to be heard exclusively by administrative tribunals which were created for that express purpose. Baederwood Center, Inc. v. Putney, 390 Pa. 53, 133 A.

2d 836 (1957); Pittsburgh Outdoor Advertising Company v. Clairton, 390 Pa. 1, 133 A. 2d 542 (1957). After determination by the administrative agency, the most effective way a zoning ordinance can be enforced is through an equity action. If we were to permit a person, sought to be restrained from violating the ordinance, to introduce testimony of a nonconforming use, we would have equity courts replacing boards of adjustment. Instead of people seeking to enforce their rights through the proper administrative procedures, we would have them continue to violate the ordinances waiting for the city to bring an equity action . . .".

*Budney,* however, is not controlling in the instant case. The precise issue involved here was considered in *Buckingham Township v. Bary,* 22 Pa. D. & C. 2d 274 (1960). The court in that case pointed out that the Buckingham Township Zoning Ordinance, unlike that involved in *Budney,* contained no provisions for the registration of nonconforming uses, and required permits only for new uses or changes in use occurring after the effective date of the ordinance. The Buckingham ordinance provided no administrative machinery whereby the defendants' right to continue the same nonconforming use might be determined. Thus, the court concluded that the property owner was entitled to raise the defense of nonconforming use in the equity action, for there was no other way for the matter to be litigated. The instant ordinance, like that in *Buckingham,* also contains no provisions for registration or permits for nonconforming uses. It is thus proper for the defense of nonconforming use to be raised in this equity action.

However, it little avails appellants, for they have failed to establish a nonconforming use. The issue is controlled by the recent decisions of this Court in *Penn Twp. v. Fratto,* 430 Pa. 487, 244 A. 2d 39 (1968) and *Penn Twp. v. Yecko Bros.,* 420 Pa. 386,

217 A. 2d 171 (1966). By substituting trailer park for golf course, the language in *Fratto* can be applied with equal force to the instant case: "[N]ot only have the appellants failed to demonstrate that they acted in good faith in proceeding with their commercial project in the face of the zoning regulations that were in the process of enactment by the township supervisors, but also the record demonstrates beyond any doubt that they were guilty of 'racing' in an effort to acquire their property and construct a [trailer park] thereon before the ordinance was finally adopted." [5]

In addition to their arguments as to why no injunction at all should have issued, appellants urge that the scope of that which did issue was too broad. The decree of the court below, in addition to enjoining the trailer park, ordered the removal from the premises of "all water, sewage and electrical facilities installed thereon." Inasmuch as these improvements were not

---

[5] George Alenovitz testified that he never applied for a permit to construct this park until April 7, that he continued right ahead with the work as if the permit had never been processed and that he was going to put in the trailer park whether he got the permit or not. He further testified that at the time he leased the land in January of 1966 he knew the zoning was under serious consideration. He told the board of supervisors he was going ahead with the work regardless of whether he got the approval or whether he didn't. He testified that when he came in with the application on April 7, 1966, there was no hurry and that he was not going to do any work *for a few years*. He further said that he realized the township was putting in zoning or trying to and that he wanted a permit before this was done. Further, that he had no intention of starting any of the work for a few years if he got the permit and that if he did not get the permit he was going to rush in and move on the trailers. George Alenovitz's father, Clement Alenovitz, one of the appellants, testified that "We wanted to establish it. We wanted permit or license, whatever you call it, to establish it. And after we establish it we are not going to go at it too fast." He further testified that he wanted to get that license so he could get in before any zoning was passed.

shown to be inconsistent with a "Farm Residential" district, it was error for the court to order their removal. The decree is thus modified to permit the use of these facilities, consistent with the present zoning, for lawful purposes.

As so modified, the decree is affirmed, each party to bear own costs.

Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.

———

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I strongly disagree with *Jacobs v. Fetzer*, 381 Pa. 262, 112 A. 2d 356 (see my dissenting Opinion, page 268), which holds that the constitutionality of a zoning ordinance cannot be determined in an action in equity. Moreover, I strongly disagree that the *same* presumption of constitutional validity that attends an Act of the Legislature is equally applicable to municipal ordinances, whether they be enacted by the council of a city, town or borough, or by the commissioners or supervisors of a township. See my dissenting Opinion in *Bilbar Const. Co. v. Easttown Twp. Bd. of A.,* 393 Pa. 62, 77, 84, 141 A. 2d 851. However, because I am an ardent disciple of stare decisis, I believe I must follow the aforesaid principles of law which the majority of this Court have adopted in several prior decisions. Because of these and other reasons, I concur instead of joining in the majority Opinion.