## Commonwealth v. Stacey

*Francis Fornelli,* for Commonwealth.
*Sherman Levine,* for defendant.

ACKER, J., October 12, 1971.—This case arises from an appeal of a summary conviction of a township ordinance and assessment of fine and costs totaling

$4,816.[1] Defendant was initially charged for a violation of the same ordinance before the same justice of the peace and similarly convicted. That conviction was appealed at June term, 1970, no. 5-A, a hearing was held and on May 8, 1970, this court found defendant guilty of violating the ordinance and assessed him fine and costs of $50. No appeal was taken. Defendant was unrepresented. The testimony in the instant case was limited by the court from that which occurred from the previous determination of May 8, 1970, to the date of the filing of the charges leading to the second conviction by the justice of the peace. Counsel for the defendant raises the constitutionality of the ordinance and attacks the sufficiency of the evidence. The ordinance concerns the placing of automobiles which are uninspected upon the defendant's property. The facts are somewhat unique.[2]

The defendant and his wife purchased the property involved in December of 1945. At the time of the purchase it was a gas station and a garage and is located at the intersection of State Street and Baker Avenue just east of the city line of the City of Sharon, but in

[1] The township has filed a stipulation with the court stating that it would be willing to accept fines for the alleged continuing violations of the ordinance in an amount not exceeding $150, it being the intent of the township to correct the situation which gave rise to the charges and not to impose such a staggering financial burden upon defendant.

[2] The captioning of this action in the name of the Commonwealth of Pennsylvania is incorrect. It should actually be Township of Hickory as the prosecuting governmental agency. There is some authority to the effect that such an error renders the entire proceedings a nullity. Commonwealth v. Fontana, 46 D. & C. 2d 121 (Lawrence County—Lyon, J.—1968). In that neither party has raised objection, however, and because of the continuing acts which would merely lead to further prosecutions, this Court has elected to decide this matter on its merits.

Hickory Township. Located in the building which is now used as a residence at one time was a lunch counter. The defendant and his wife reside in the back of the building. The neighborhood to the west and north of this property is commercial. Immediately to the west and contiguous to the defendant's property is Dunn Automotive Supply. Across State Street and to the north is Phillips Motor Sales wherein both new and used automobiles are dealt with. Since the hearing of 1970 cater-corner across the street to the northeast of the subject property Wein Motors, a new large automobile agency for the sale of new and used cars and trucks, has begun operation. To the south of the defendant's property is a residential area as well as on the south side of State Street east of that property. Defendant is a retired Westinghouse employe who entered that state since the first hearing. He first began working at Westinghouse in April of 1951, but prior to that time made his living operating a garage and service station as well as doing repair work. He was engaged in such work at his present residence. Even after commencing employment at Westinghouse, he, as a part-time operation, continued to repair cars. He has continuously on his premises had a group of old automobiles. At the time of the last hearing, he produced titles in the name of his wife for a 1951 Ford, a 1959 Plymouth sedan, a 1957 Ford sedan, another 1957 Ford sedan, a 1956 Ford sedan, a 1939 Ford two-door sedan, and a second 1949 Ford sedan. He also had a 1939 Ford upon the property which he testified is now an antique and is worth approximately $700.

Particularly since the time of his retirement in February of 1971, he has been repairing or remodeling these various cars at his leisure. At the first hearing, there was some evidence of the complaint of rodents in or about the property, but whatever may have caused

that condition had been cleared by the time of the second arrest. Also, certain piles of debris on the subject property had been removed, although a five to eight hundred pound motor was still located on cement blocks and many of the cars are on blocks and inoperable. None of the subject vehicles carry current inspection stickers.

Hickory Township Ordinance No. 8-68 enacted on May 5, 1968, by its preamble is designed to prohibit the abandonment of vehicles or keeping wrecked or nonoperable vehicles either on the public streets or private property. It is penal in nature, permitting a fine of not more than $50. in cost for each offense and, in default thereof, to be imprisoned in the county jail for not more than 10 days. It further provides that each day's continuance of a violation after notice shall constitute a separate offense. Following the preamble is a series of whereas clauses to inform the reader of the reasons for the ordinance. Whereas clause no. 3 speaks of a desire to prevent the impeding of traffic in streets, to prevent the interference with enjoyment of property or reducing its value, etc. concluding, "Thereby constituting a nuisance affecting the public health and safety." Whereas clause no. 4 allows that in order to protect the public health, safety and welfare, adequate protection requires that such conditions be "regulated, abated or prohibited." It is agreed by both parties that the vehicles are not abandoned, but rather come within the definition of nonoperating vehicles. Those vehicles by the ordinance are ". . . any vehicle which does not display thereon a current Pennsylvania registration plate and inspection sticker. . .": Section 12. If, however, such a vehicle did have both a current inspection sticker and plate but did not presently meet the requirements of the Pennsylvania Vehicle Code concerning the condition of vehicles and necessary equipment to be attached in order to pass inspection,

once the violator received a 30-day notice and that period expired without a correction of the condition, he becomes in violation. Therefore, it cannot be seriously questioned, and this court finds as a fact, that at least one if not all of the vehicles involved are within the definition of "non-operating vehicles." However, the contest arises in interpreting section 5, which reads:

"EXCEPTIONS. This ordinance shall not apply with regard to any vehicle in an enclosed building; a vehicle on the premises of a business enterprise operated in a lawful place and manner, when necessary to the operation of such business enterprise; or a vehicle in an appropriate storage place or depository maintained in a lawful place and manner within the township."

The ordinance does not endeavor to define "an appropriate storage place" nor a "depository maintained in a lawful place and manner."

The parties agree that the ordinance is not zoning. This is the last point on which they agree. Defendant contends that the only possible statutory authority for such an ordinance is that granted first-class townships to control nuisances[3] or that to control junk dealers.[4] If the authority be that to control nuisances, it must be confined to that section of the ordinance giving authority as to matters "prejudicial to the public health or safety" for junk automobiles are not specifically mentioned.[5] If the authority for this ordi-

---

[3] Act of May 27, 1949, P. L. 1955, sec. 31, 53 PS §56526.

[4] Act of May 27, 1949, P. L. 1955, sec. 31, 53 PS §56543.

[5] This is contrary to the Act of March 21, 1968, P. L. —, (No. 22), sec. 1, 53 PS §65712, dealing with second-class townships which specifically gives the authority to control abandoned or junk automobiles on private property or the power given to boroughs by the Act of February 1, 1966, P. L. — (1965) 1656, sec. 1202, 53 PS §46202, subsec. (5), which specifically mentions "abandoned or junk automobiles."

nance is confined to 56 PS §56526, the power is merely to prohibit and remove or cause the same to be done and collect the cost thereof together with a penalty of 10 percent in the manner provided by law for the collection of municipal claims or by actions of assumpsit or to seek relief by a bill in equity. No authority for a criminal statute is granted.

If the authority is to rest upon 53 PS §56543, the persons who are subject to such regulations and licensing are junk dealers, pawnbrokers, hucksters, peddlers, vendors and public auctions and auctioneers. Therefore, it is questionable whether this defendant would come within the category of any of those persons.

The township, on the other hand, finds authority for its ordinance in two completely different sections of the Township Code. Under public safety, it is authorized to take all needful means for securing the safety of persons or property within the township.[6]

Further authority is claimed by the township under its general powers to make such ordinances "as may be deemed expedient or necessary for the proper management, care and control of the township. . . , and the maintenance of peace, good government and welfare of the township and its trade, commerce and manufacturers."[7]

---

[6] Act of May 27, 1949, P. L. 1055, sec. 31, 53 PS §56510. This section has authorized the printing of literature on safety for school children, Sacks v. Price, 430 Pa. 127, 241 A. 2d 916 (1968); the fencing of quarries, Morrow v. Springfield Township, 2 D. & C. 2d 620 (1954); and the right to permit persons from going on another's land with a gun without the owner of the land's permission: Commonwealth v. Ashenfelder, 81 Montg. L. R. 376, 54 Mun. L. Rptr. 323 (1963).

[7] Act of May 27, 1949, P. L. 1955, sec. 32, 53 PS §56552: Authority was denied to a township to attempt to prohibit all flashing and intermittent lights and signs as being too general: Appeal

We have no doubt that the control of abandoned or nonoperating vehicles may be a proper exercise of the police power of a township. However, there are some well-established legal principles which must be considered. ". . . any restriction imposed by such an ordinance on the use of property must be reasonably conducive to the safety, health, morals or general welfare of the public, for the exercise of the police power is always subject to judicial review and a law based upon it must not be patently beyond the necessities of the case but must bear some rational relation to the end to be obtained": Adams v. New Kensington, 357 Pa. 557, 564, 555 A.2d 392 (1947). Further, ". . . auto junk yards are not a nuisance per se; . . . also aesthetic reasons are not sufficient in themselves to support a conclusion that the operation and maintenance of certain businesses will be contrary to the best interest of the community": Rogalski v. Township of Upper Chichester, 406 Pa. 550, 555, 178 A.2d 712 (1962).

The parties completely differ as to whether the ordinance at bar declares the possession of nonoperable vehicles a nuisance per se, as claimed by defendant, or whether the township is required to prove the existence of a nuisance as contended by the prosecutor. If the ordinance declares the mere possession of a nonoperable vehicle a nuisance per se, it is unconsti-

---

of Ammon R. Smith Auto Co., 423 Pa. 493, 223 A. 2d 683 (1966). Nor could the township use this statute as authority for an ordinance to prohibit all used car sales lots to be more than 500 feet from the dwelling: New Hanover Township v. Young, 30 D. & C. 2d 663, 80 Montg. L. R. 331 (1962). It was, however, used successfully by a township in an ordinance regulating signs and billboards as being within proper police power: Norate Corp. v. Zoning Board of Adjustment, 417 Pa. 397, 207 A. 2d 890 (1965).

tutional. [8] We agree with the township that the ordinance does not make the mere possession of a nonoperating vehicle upon private property a nuisance per se. We just as readily disagree with the township, however, in its position that it need not prove that the mere possession of such a vehicle is a nuisance. As previously noted, the very preamble setting forth the reason for the ordinance conditions it upon being a nuisance affecting the public health and safety. Further, if it is not a nuisance affecting public health and safety, there is no reason for having such an ordinance. Therefore, starting with the judicially declared conclusion of our appellate courts that having or storing junk vehicles is not in itself a nuisance affecting public health, safety or morals,[9] what evidence has the township produced to support its conclusion? The township argues that some of the vehicles being on cement blocks created danger to children, and yet these vehicles have been on cement blocks for many years and there is no history of any child having been hurt. It is claimed that because windshields are missing or headlights have been broken, persons may become injured, but we have no reports of any such injury. The testimony discloses some of the vehicles are rusting and deteriorating and that some of the parts are not operable or the vehicles themselves are missing wheels or fenders. Further, there is no barricade or fence to prevent children from getting access to the vehicles. As to the former items, plaintiff has been unable to point to any authority which states that the mere missing of windshields or headlights or rusted parts in themselves create a nui-

---

[8] Commonwealth v. Hanzlik, 400 Pa. 134, 161 A. 2d 340, 341 (1960); Commonwealth v. Christopher, 184 Pa. Superior Ct. 205, 132 A. 2d 714, 716 (1957); and, most recently, Borough of Macungie v. Hock, 1 Pa. Com. Ct., 276 A.2d 853 (1971).

[9] See footnote no. 8.

sance. As to the latter, if the township desires a fence around such property, it has the authority to enact an ordinance so requiring,[10] but it has not done so.

Further, it is argued by the township that the subject property is in proximity to a playground and also in a residential area where school buses pick up and leave children. The playground is at the extreme south end of the subject's street and there is no evidence that children were ever attracted to the automobiles in question. In this court's opinion, the complaint really centers on the lack of aesthetic value because of the obvious appearance of the cars.

It is true, as argued by the township, that, "Beauty may not be clean, but she is not an outcast beyond the pale of protection of respect. She may at least shelter herself under the wing of safety, morality, or decency. Thus, while a restriction upon the use of one's property may not be based on aesthetic considerations only, such considerations may be taken into consideration when other elements of public health, safety, or welfare are present": McQuillin's, sec. 24.16, page 507. However, this court has been unable, after a careful search of the record, to find any "other elements of public health, safety or welfare" proven. The burden is upon the Commonwealth to show beyond a reasonable doubt that defendant was, in fact, maintaining a nuisance.[11] This it has failed to do.

Another and equally important consideration of section 5 of the ordinance is what the township intends when it states, "This ordinance shall not apply with regard to any vehicle . . . in an appropriate storage place or depository maintained in a lawful place or manner within the township." We are not unmindful

---

[10] Morrow v. Springfield Township, supra.

[11] Commonwealth v. Hanzlik, supra, page 139.

that an ordinance should not be declared unconstitutional unless it "clearly, palpably, and plainly violates the constitution."[12] It is the same rule applicable to the determination of the constitutionality of the statute of the legislature.[13] An ordinance to be constitutionally valid must forbid or require the doing of an act in terms which are not so vague that men of common intelligence must necessarily guess at its meaning. If it does not meet this test, it violates the first essential of due process of law.[14] Appropriate by Webster's New Collegiate Dictionary—1961 is defined as, "Belonging, peculiarly; specially suitable; fit; proper." The difficulty is determining as to whom it is suitable or proper. Certainly to defendant it was an "appropriate storage place." If it is not as to the township, the obligation of the governmental unit is to inform defendant by a lawfully passed ordinance what it means by appropriate. Does this require a fenced area to exclude the public from view, a closed building or an open field away from a highway? Certainly, men of ordinary intelligence can differ as to its meaning. By analogy, the use of the word "suitability" in a township ordinance concerning a junkyard has been held to be too vague and indefinite, for there are no guidelines to insure uniformity.[15]

Wherefore, section 5 of the subject ordinance is invalid.

It appears two basic desires have come into collision in this case. The first is the laudable efforts of the

---

[12] Township of Honey Brook v. Alenovitz, 430 Pa. 614, 243 A. 2d 330 (1968).

[13] Daly v. Hemphill, 411 Pa. 263, 191 A. 2d 835 (1963).

[14] Chester v. Elam, 408 Pa. 350, 184 A. 2d 257 (1962).

[15] Township of Upper Milford v. Beck, 32 Lehigh L. J. 420 (1967).

township to eliminate what it and, in all probability, many of its citizens regard as an eyesore on its main business street. The other is the right of a man to use his property as he wishes for his own enjoyment in his years of retirement. An owner of property in Pennsylvania is still entitled to certain unalienable constitutional rights of liberty and property. These include the right to use his own home in any way he desires, provided he does not: (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional.[16] The courts stand between the government and the people to determine whether constitutional rights of liberty and property are taken or denied. It is the conclusion of this court that the property owner must be permitted to continue to use his property as he has in the past. To do less would be to deny him an unalienable constitutional right.

Wherefore, the decision of the justice of the peace in finding defendant guilty and imposing fine and costs of $4,816 or in any other amount is reversed and defendant is discharged.

### ORDER

And now, October 12, 1971, the finding of guilt of defendant, Andrew Stacey, by the justice of the peace and the imposition of fine and costs totaling $4,816 or any other sum as a result of an alleged violation of Hickory Township Ordinance 8-68 is reversed and defendant is hereby discharged.

---

[16] Andress v. Zoning Board of Adjustment, 410 Pa. 77, 188 A. 2d 709 (1963).