421 A.2d 215

SHOHOLA TOWNSHIP BOARD OF SUPERVISORS and John
E. Quinn and Gudrun K. Quinn, his wife

v.

George L. BISHOP and Madeline Bishop, his wife.

Appeal of SHOHOLA TOWNSHIP BOARD OF
SUPERVISORS.

SHOHOLA TOWNSHIP BOARD OF SUPERVISORS and John
E. Quinn and Gudrun K. Quinn, his wife

v.

James J. WHITE and Florence White, his wife.

Appeal of SHOHOLA TOWNSHIP BOARD OF
SUPERVISORS.

Superior Court of Pennsylvania.

Argued Sept. 12, 1979.

Filed April 25, 1980.

314

Jack G. Linshaw, Milford, for appellants.

Carl Leventhal, Hawley, for appellees.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This appeal arises from an order sustaining preliminary objections to two complaints in equity. The complaints are substantially identical and were filed on April 13, 1978, by the Shohola Township Board of Supervisors and John and Gudrun Quinn, one against George and Madeline Bishop, the other against James and Florence White.

The allegations on the basis of which the Quinns seek relief may be summarized as follows. The Quinns are owners of a campsite in Shohola Falls Trails End, a subdivision that had been established for campsites; the Bishops and Whites are owners of other campsites in the subdivision. The deeds of each of these owners is restricted explicitly by a declaration of restrictions that had been previously recorded by Greenbriar Development Company, the developer and original owner of the subdivision. One of the restrictions in the declaration states that "[n]o structure of any type shall

be erected, placed or permitted to remain on any campsite."
The Bishops have violated this restriction by erecting on
their campsite a building, thirty feet by eight feet, attached
to a trailer; the Whites have violated it by erecting on their
campsite a frame construction twenty feet by eight and a
half feet, a shed ten feet by seven feet, and a trailer twenty
feet by seven and a half feet. Both the Bishops and the
Whites have been notified in accordance with the declaration
of restrictions, but they have not removed the offending
structures. As a result, the Quinns, exercising their rights
under the declaration of restrictions, seek injunctive relief.

The allegations on the basis of which the Shohola Town-
ship Board of Supervisors seeks relief may be summarized as
follows. On July 7, 1972 (a date prior to the purchase of
campsites by any of the property owners involved in this suit
but subsequent to the recording of the declaration of restric-
tions), the Greenbriar Development Company applied to the
Board of Supervisors for a zoning variance to permit the
development of Shohola Falls Trails End as a subdivision for
campsites. The Board granted the variance but on the
condition that the density of the subdivision not exceed six
campsites per acre, that no campsite be smaller than 4,500
square feet, that all lots in the subdivision be subject to the
recorded declaration of restrictions, and that the develop-
ment company post a $2,500 bond to ensure the enforcement
of the declaration of restrictions.[1] By erecting structures on
their campsites and thus violating the declaration of restric-
tions, the Bishops and the Whites also violated the conditions
imposed by the Board of Supervisors on its grant of a
variance to Greenbriar. As a result, the Board seeks injunc-
tive relief.

1. This requirement was satisfied when $2,500 was deposited in the
First National Savings Bank of Pike County on January 4, 1973.
Subsequently, on April 11, 1973, an additional $2,500 deposit was
made. This money has since been withdrawn by the Board, with the
consent of Shohola Falls Trails End Property Owners' Association,
the successor to Greenbriar Development Company, to defray the
expenses of the present litigation.

The Bishops and the Whites filed preliminary objections to the complaints, alleging 1) that the Board of Supervisors could not enforce the declaration of restrictions and therefore under Pa.R.C.P. 2002(a) was not a real party in interest, and 2) that the Board's sole remedy for a violation of the declaration of restrictions was to call the bond posted by Greenbriar.[2] The Board and the Quinns filed answers to the preliminary objections, maintaining that the Board had "standing to enforce restrictive covenants which formed a part of the Variance" granted to Greenbriar, and denying that the Board's sole remedy was to call the bond posted by Greenbriar. Briefs on the preliminary objections were submitted, and on January 31, 1979, after oral argument, the lower court sustained the objections and ordered the Board removed from the record as a party plaintiff.[3] The Board then filed two separate appeals in the Commonwealth Court, one from the lower court's order removing it from the suit against the Bishops, the other from the order removing it from the suit against the Whites. The Bishops filed a motion to quash the Board's appeal in the suit against them. On March 29, 1979, both of the Board's appeals and the Bishops' motion to quash were transferred from the Commonwealth Court to this court pursuant to 42 Pa.C.S.A. § 5103(a) (1979 Pamphlet). The appeals were consolidated, and on April 19, 1979, this court denied the motion to quash.

In arguing that the Board is not a real party in interest, the Bishops and the Whites ignore material allegations in the complaints. While we might agree that the Board could not bring suit to enforce the declaration of restrictions were the declaration not a condition imposed on

---

**2.** Actually, the Bishops' preliminary objections were so broadly worded that they seemed to attack both the Board's and the Quinns' ability to prosecute the suit against them. During argument before the lower court, however, the Bishops admitted that the Quinns could maintain their suit.

**3.** Although the lower court has stated that its removal of the Board was based on its conclusion that the Board was not a real party in interest, the lower court's opinion shows that it also considered the claim that the Board's sole remedy was limited to the calling of the bond.

the variance granted by the Board to Greenbriar, the complaints allege that the declaration was such a condition.[4] There can be no doubt that the Board in granting the variance had the power to impose as prerequisites to the grant reasonable conditions, restrictions and safeguards in furtherance of public health, safety and welfare. *E.g., Everson v. Zoning Board of Adjustment*, 395 Pa. 168, 149

4. We note that the Bishops and the Whites might have argued that the exhibits attached to the complaints refute the allegation in the complaints that the Board granted the variance to Greenbriar on the condition that the property owners in the subdivision be subject to the declaration of restrictions. The Board's order granting the variance states:

AND NOW, to wit, this 4th day of August, 1972 upon petition of Greenbriar Development Company, the Supervisors of Shohola Township grant the variance that the subdivision plans of a permanent campsite development known as "Shohola Falls Trail End" shall be authorized to contain a density of not more than six (6) campsites per acre, with no campsite smaller than 4,500 square feet.

It has been stated that to be effective, a condition "should be expressly stated in the board's order. A statement of intent by an owner does not necessarily bind the future and is not equivalent of a condition." Robert S. Ryan, Zoning Law and Practice in Pennsylvania § 9.4.18 (1970). *See also Esterhai v. Zoning Board of Adjustment*, 1 Pa.Cmwlth. 361, 274 A.2d 556 (1971); 82 Am.Jur.2d—*Zoning and Planning* § 260.

We also note, however, that Greenbriar's application for the variance stated that "the theme of all of said development is the permanent sale of campsites with use restricted by covenant to camping, and prohibiting the permanent use or construction of any bind *[sic]* on said campsite," and that all lots sold in any plan approved under the variance would be subject to the restrictions in the declaration of restrictions. The bond agreement signed by Greenbriar on September 16, 1972, in stating that the bond was to ensure the enforcement of the declaration of restrictions, further indicates that Greenbriar and the Board understood that the imposition of the declaration of restrictions upon the property owners of the subdivision was a condition of the variance. In a different context, the Commonwealth Court has held that all of the specifications and patent representations made in an application, site plan, and other documents submitted by the applicant for a building permit are an integral part of the approval and permit issued and may be considered in determining whether a building restriction exists. *Pittsburgh v. Elman Associates, Inc.*, 6 Pa.Cmwlth. 1, 291 A.2d 813 (1972). *See also Marriott Corp. v. Plymouth Township*, 101 Montg.Cty.Reps. 84 (1976). Whether a similar result should obtain in the present case should not be decided in the absence of briefs and argument by counsel specifically addressing the issue.

A.2d 63 (1959); *Cornell Uniforms, Inc. v. Township of Abington,* 8 Pa.Cmwlth. 317, 301 A.2d 113 (1973); 53 P.S. § 10912 (1972). *See also Butler v. Derr Flooring Co.,* 4 Pa.Cmwlth. 341, 285 A.2d 538 (1971).[5] There can also be no doubt that the Board had the right to sue in equity to enforce those conditions when breached. *See Upper Moreland Township v. Meade,* 420 Pa. 613, 218 A.2d 271 (1966); 53 P.S. § 10617 (1972); Robert S. Ryan, Zoning Law and Practice in Pennsylvania § 9.4.21 (1970); *cf. Board of Supervisors of West Brandywine Township v. Matlack,* 38 Pa. Cmwlth. 366, 394 A.2d 639 (1978); *County of Fayette v. Blout,* 35 Pa.Cmwlth. 523, 387 A.2d 167 (1978). Given these principles, it follows necessarily that the Board is a real party in interest to the present suits. *See Spires v. Hanover Fire Insurance Co.,* 364 Pa. 52, 70 A.2d 828 (1950); *Hillbrook Apartments, Inc. v. Nyce Crete Co.,* 237 Pa.Super. 565, 352 A.2d 148 (1975); *Commonwealth, Dept. of Transportation v. Pa. Power & Light Co.,* 34 Pa.Cmwlth. 594, 383 A.2d 1314 (1978) (to be a real party in interest one must not merely have an interest in the result of the action but must be in such command of the action as to be legally entitled to give complete acquittance or discharge to the other party upon performance).

The lower court stated that the Board was not a real party in interest because "[h]ad [Shohola Township] originally adopted [the] restrictions [contained in the declaration of restrictions] as part of its zoning scheme, it would be doubtful whether it could withstand a judicial inquiry into its validity." This statement, however, confuses the issue of the Board's ability to be a party to the present suits with the issue of its right to secure relief upon its cause of action. Moreover, if we overlook the failure of the Bishops and the Whites to challenge the legality of the Board's conditions in

5. There may be some question as to the Board of Supervisor's power to grant the variance itself. *See Board of Commissioners of McCandless Township v. Beho Development Co., Inc.,* 16 Pa.Cmwlth. 448, 332 A.2d 848 (1975); 53 P.S. § 11006(1)(d) (the granting of variances is exclusively a function of the *zoning hearing board).* The Bishops and the Whites, however, have not challenged the Board's power to grant the variance to Greenbriar.

their preliminary objections, and assume that the lower court could have properly reached the merits of this issue, and further assume that the Board's imposition of the numerous detailed restrictions in the declaration was unreasonable and that as a result even those restrictions in the declaration that the Board might have reasonably imposed were voidable, still the lower court was confronted with the issue of whether the Bishops and the Whites could raise the illegality of the conditions as a defense in an enforcement proceeding. *See Muncy Borough v. Stein*, 440 Pa. 503, 270 A.2d 213 (1970); *Honey Brook Township v. Alenovitz*, 430 Pa. 614, 243 A.2d 330 (1968); *Mager v. Hilltown Township*, 6 Pa.Cmwlth. 90, 293 A.2d 631 (1972), *appeal dismissed*, 411 U.S. 979, 93 S.Ct. 2273, 36 L.Ed.2d 955 (1973); Robert S. Ryan, Zoning Law and Practice in Pennsylvania § 9.4.21 (1970). None of these issues was recognized or discussed by the lower court (or by the parties), and we shall not consider any of them now.

▪▪▪ In holding that the Board is a real party in interest, we do not intend to condone the pleading deficiencies that appear in the complaints. When the Board and the Quinns joined as party–plaintiffs in the suits against the Bishops and the Whites (as they were entitled to do so under Pa.R.C.P. 2229(a)),[6] they were required under Pa.R.C.P. 1020(b) to state their respective causes of action in separate counts of the complaints, each count preceded by a heading identifying the cause of action pleaded in that count. Had the Board and the Quinns followed these rules, much confusion might have been avoided as to the nature of the Board's cause of action against the Bishops and the Whites—*i.e.*, was the cause of action premised upon the conditions the Board

6. Pa.R.C.P. 2229(a) provides:
   (a) Persons may join as plaintiffs who assert any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the rights to relief of all such persons will arise in the action.

placed on the variance granted to Greenbriar, or was it premised, as the Bishops and the Whites conceived, upon some vague notion that a police power exists entitling the Board to enforce any restrictive covenant that landowners might privately agree to. The remedy for poor pleading, however, was not the removal of the Board from the suits, but leave to the Board to amend its complaints. *See generally William Penn Parking Garage v. Pittsburgh*, 464 Pa. 169, 346 A.2d 269 (1975); Pa.R.C.P. 1033; Goodrich–Amram 2d § 1033:4.[7]

■ As regards the argument that the order of the lower court should be affirmed because the Board's sole remedy is to call the bond posted by Greenbriar, we understand this argument to be an assertion that by requiring Greenbriar to post bond in the amount of $2,500, the Board agreed to limit its remedy for a violation of the conditions on the variance to an action on the bond, and to forgo the usual remedy of an action in equity. The Bishops and the Whites, however, point to no language either in the Board's order granting the variance or in any other document reflecting such an agreement. Nor have we discovered such language upon our review of the record.

The order of the lower court is reversed, and the case is remanded with instructions to the lower court to grant leave to the Board and the Quinns to amend their complaints, within such time as the lower court deems appropriate, so as to conform to Pa.R.C.P. 1020 and 1021.

7. In particular, we note that even if the Board were misjoined with the Quinns in these suits, *but cf. Philadelphia v. Wyszynski*, 381 Pa. 153, 112 A.2d 327 (1955) (forty–seven property owners alleging that defendant's meatpacking plant was a nuisance allowed to intervene in equity proceeding brought by city against defendant for zoning ordinance violation); *Molnar v. George B. Henne & Co., Inc.*, 377 Pa. 571, 105 A.2d 325 (1954) (city allowed to intervene in equity proceeding brought by property owners alleging defendant's machine shop was nuisance and violated zoning ordinance), the remedy would be to sever the Board's causes of action, not to dismiss the Board from the suits entirely. Pa.R.C.P. 2232(b); Goodrich–Amram 2d § 2232(b):1.