## Palmer Township Fire  Company
## v. Palmer Township

418

*Elwood Malos,* for plaintiff.
*Franklin S. VanAntwerpen,* for defendant.

PALMER, *P. J.,* July 2, 1973 — This matter is before us on plaintiffs' complaint in equity seeking to enjoin enforcement of ordinance no. 117 of Palmer Township adopted January 25, 1972. Previously, on May 8, 1972, defendants' preliminary objections were denied and dismissed by this court (*opinion of Williams, J.*).

From the record and testimony, we make the following

## FINDINGS OF FACT

1. Palmer Township, a large second class township located in Northampton County, is presently served by two private nonprofit corporations which are, by virtue of their articles of incorporation, fire companies.

2. On May 27, 1935, Palmer Township Fire

Company (the company) was organized and chartered for the purpose of fighting fires in Palmer Township.

3. The company continued to fight fires in Palmer Township from the time of its charter until January 29, 1972.

4. Palmer Municipal Fire Department, Inc. (the department) was formed in 1965 by a group of volunteers who left the company following a dispute.

5. Aside from the company and the department, there are no other fire-fighting organizations serving within the township.

6. Neither the members of the company nor the members of the department receive any remuneration for their activities as firemen.

7. The department's equipment and real estate are owned by Palmer Township and were purchased from funds raised within the township by taxes.

8. The company has independently raised the funds to purchase its real estate and fire house as well as additional moneys for equipment and personnel training. The township, which has donated some items of equipment and supplies to the company, pays for the workmen's compensation and liability insurance coverage for the company. In addition, the company receives from the township an annual payment of up of $1,000 for gas, oil, heat, lights and telephone.

9. During the co-existence of the two fire-fighting groups in Palmer Township, antagonism has continually existed between them. During this period of time, there have been numerous incidents and complaints regarding the ability of the two organizations effectively to co-ordinate their fire-fighting capabilities. On several occasions,

the actual performance at the site of a fire was hampered by members of the separate organizations following different orders from their respective leaders.

10. Meetings were held by leaders of both groups to attempt to resolve these problems. An effort was made to consolidate the department and the company and thereby provide a unified training program and organization. Ultimately, however, all efforts to settle and compromise these differences failed.

11. The department is larger and in some respects better equipped than the company.

12. As a result of the dispute between the two fire-fighting organizations, the Palmer Township Supervisors, on January 25, 1972, adopted ordinance no. 117, which reads, in part, as follows:

"No person, partnership, corporation or organization shall interfere with or participate in any way in fire fighting activities or respond to any alarm of fire unless such person, partnership, corporation or organization is requested to so participate or respond by the Fire Commissioner or Fire Chief of Palmer Township, or by the ranking officer of the Palmer Municipal Fire Deparment, or unless such person is a member of the Palmer Municipal Fire Department or an officer or employee of Palmer Township or the Pennsylvania State Police."

The ordinance further provides that violators may be fined in an amount not to exceed $300 or may be sentenced to imprisonment not exceeding 30 days.

13. Pursuant to this ordinance, the Palmer Township Fire Commissioner, on January 29, 1972, sent the company a letter informing them that they

could no longer respond to fires as before, but must answer only on a second alarm basis.

14. Since enactment of the ordinance and the subsequent letter, the company has been called to respond to a fire on one occasion; however, no second alarms have officially been called since January 29, 1972.

15. A township fire captain and the fire chief testified as experts that passage of the ordinance had in no way lessened Palmer Township's fire forces but that, instead, it had resolved the previous problems incident to fire-fighting in the township. The fire chief further testified that in the future the company will be called to respond to fires when they are needed.

## DISCUSSION

Plaintiffs originally contended that the ordinance and the letter of January 29, 1972, represented an attempt to phase out the company in favor of the department, and was a violation of the Act of June 13, 1955, P. L. 173, sec. 2, 53 P. S. §3832, which provides:

"No municipality shall replace any volunteer fire company serving the municipality with a paid fire company unless a majority of the voters in the municipality have first voted in favor of the change."

However, plaintiffs now concede that the department is not a "paid fire company" and, therefore, they have abandoned this argument.

Plaintiffs nevertheless urge that the township was without authority from the Commonwealth to promulgate ordinance no. 117. We disagree.

It is true, as plaintiffs contend, that townships

are but political subdivisions of the Commonwealth and, therefore, " . . . possess only such powers as have been granted to them by the legislature, either in express terms or which arise by necessary and fair implication or are incident to powers expressly granted or are essential to the declared objects and purposes of the townships . . ." Comm. v. Ashenfelder, 413 Pa. 517, 521, 198 A. 2d 514 (1964).

In the case at bar, however, the authority for this ordinance is not lacking. Section 702 of The Second Class Township Code[1] gives the supervisors the power:

"Out of the general township fund to purchase, or contribute to the purchase of, fire engines and fire apparatus, for the use of the township and to appropriate moneys to fire companies located therein for the operation and maintenance thereof, and for the purchase and maintenance of fire apparatus, and for the construction, repair and maintenance of fire company houses, in order to secure fire protection for the inhabitants of the township . . . To ordain rules and regulations for the government of such fire companies and their officers . . . ."

The record is clear that the company receives up to $1,000 annually from the township and that the municipality has in the past contributed some equipment and supplies to the company. Defendants argue that this support is merely "token" when compared to the total company budget and that the statute was not intended to apply to such small payments. However, it is not apparent from

---

1. Act of May 1, 1963, P.L. 103, art. VII, sec. 702, cl. IV, as amended, 53 P.S. §65704.

the wording of the statute that there is any requirement of a minimum level of payments, other than no support at all, before a township may regulate a company. Perhaps a truly "token" payment of $25 or $50, made only to invoke the township's regulatory power, would not suffice; but that situation is not present here. The township's support of the company's fire house and equipment has been consistent and certainly not de minimis. In the absence of reported decisions to the contrary, we hold that the support rendered in this case is sufficient to enable the township to prescribe rules and regulations applicable to the company.

Additional ground for the township's position is found throughout The Second Class Township Code. Thus, under section 702 of the Code, a township is given the power to provide workmen's compensation insurance for its volunteer firemen,[2] and, as noted above, Palmer Township does pay for this insurance. The same section of the Code also gives a township the power to prescribe regulations necessary for the health and safety of its citizens,[3] to "take all needful means for securing the safety of persons or property within the township,"[4] and to adopt ordinances not inconsistent with the Constitution and laws of the Commonwealth necessary for the welfare of the township.[5]

Plaintiffs contend that the above provisions of the code as general enabling acts are insufficient authority for the enactment of the ordinance in this case. They again cite the language of Comm. v. Ashenfelder, supra, at 522:

2. 53 P.S. §65713.
3. 53 P.S. §65729.
4. 53 P.S. §65747.
5. 53 P.S. §65762.

"An examination of §702 indicates that its language is most inappropriate and inadequate to evidence any intent on the part of the legislature to delegate to second class townships vast and extensive police powers; certainly no intent is manifest or evident to grant powers to second class townships to act in areas where the Commonwealth itself, through legislative enactments, has provided regulation."

We do not find this statement to be applicable to the case at bar. The Ashenfelder decision concerned the validity of a township ordinance which prohibited the use of firearms on land without the written consent of the possessor. The court held the ordinance to be invalid since the township was attempting to enter a field already regulated by the Commonwealth through the Penal Code and since the consent provisions bore no reasonable relationship to the safety of the inhabitants of the township.

In contrast to Ashenfelder, the ordinance in the case at bar deals with fire safety which, unlike the control of firearms, is largely left unregulated by the Commonwealth. While the Penal Code, of necessity, contains penalties for arson and related offenses, there is no provision for comprehensive Commonwealth fire protection akin to a state police force. Fire protection is not only of local concern but is also a matter in which the general public has a vital interest: Iben v. Monaca Borough, 158 Pa. Superior Ct. 46, 43 A. 2d 425 (1945); nevertheless, if the local municipality does not control fire protection, the community will often be left defenseless. We therefore conclude that the township, by necessary or fair implication or by powers incidental to those expressly granted, did

have sufficient authority to pass ordinance no. 117.[6]

Plaintiffs lastly argue that the township's action was unconstitutional, not because of preemption by the Commonwealth, but because the ordinance was in conflict with a provision of the now repealed Penal Code,[7] which reads as follows:

"Whoever intentionally hinders or prevents or attempts to hinder or prevent any fireman from performing his functions, powers or duties as a fireman is guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both."

There is no similar provision in the newly enacted Crimes Code, which became effective on June 6, 1973, other than general sections penalizing the obstruction of governmental functions.[8] None of these prohibitions of the Crimes Code applies to the present situation. Thus, since ordinance no. 117 could now be reenacted without conflicting with any Commonwealth statute, we believe this question is now moot.

---

6. Further evidence of the township's implied power to regulate the company is found in the Act of April 29, 1959, P.L. 58, sec. 623, 75 P.S. §623 (The Vehicle Code), which provides that, inter alia, every township is jointly and severally liable with its volunteer firemen for their negligence while responding to, attending, or returning from a fire. Thus, Palmer Township provides liability insurance coverage for its volunteer firemen.

7. Act of June 24, 1939, P.L. 872, sec. 325.1, added Oct. 9, 1967 P. L. 392 (no. 176), sec. 1, 18 P. S. §4325.1, since repealed.

8. E.g., Act of December 6, 1972, P.L. 1068 (no. 334), 18 P.S. §5101

We do not rest our decision upon a finding of mootness, however, since counsel for neither side has raised this issue. On the merits, a reasonable reading of the ordinance and the statute reveals no conflict between them. The ordinance addresses itself to the question of who is to respond to fire alarms within the township, and, as such, it unifies command over fire-fighting activities in either the fire commissioner or fire chief. The statute, on the other hand, was intended to prohibit individuals from frustrating the activities of those firemen who were duly authorized to respond to fires. Were we to accept plaintiffs' reading of the statute, we would have to conclude that whenever a fire chief or other supervisor ordered some firemen to respond to an alarm and others not to respond, he was acting in violation of the law. We cannot believe that the legislature intended such an absurd result.

The same presumption of constitutional validity which applies to an act of the legislature is equally appropriate for municipal ordinances, including those passed by township supervisors: Bilbar Construction Co. v. Easttown Twp. Board of Adjustment, 393 Pa. 62, 141 A.2d 851 (1958). At most, the ordinance and the statute are similar only to the extent they both contain the words "interfere with." Even if those words were removed from the ordinance, the text would possess sufficient meaning for the remainder of it to stand valid, and the ordinance would still control the actions of the fire company in responding to alarms. A statute may be in part constitutional and in part unconstitutional; in that event, where, as here, the two portions of the statute are independent of each other,

the constitutional provision may stand while the rest falls: Rutenberg et al. v. Philadelphia et al., 329 Pa. 26, 196 Atl. 73 (1938). This rule applies to all laws, including municipal ordinances: Grisbord et al. v. Philadelphia et al., 148 Pa. Superior Ct. 91, 24 A.2d 646 (1942).

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the issues raised.

2. Neither the department nor the company are paid fire companies within the meaning of the Act of June 13, 1955.

3. There is sufficient authority in The Second Class Township Code and The Vehicle Code to permit Palmer Township to prescribe rules and regulations for the government and control of fire companies within the township.

4. There is no evidence that the actions of the township supervisors in this case were not reasonable and within their discretion.

5. The Commonwealth has not preempted the area of law dealing with the control of fire companies; nor is ordinance no. 117 in conflict with any Commonwealth statute so as to render it unconstitutional.

## ORDER

And now, July 2, 1973, the complaint in equity seeking to enjoin enforcement of Palmer Township ordinance no. 117 is hereby denied and dismissed.